802 P.2d 1032

**SEARS CONSUMER FINANCIAL CORP., a Delaware corporation, dba in Arizona as Allstate Enterprises, Inc., Plaintiff-Appellant,**

v.

**THUNDERBIRD PRODUCTS, an Indiana corporation, Defendant-Appellee.**

No. 1 CA–CV 89–146.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 2, 1990.

Review Denied Jan. 8, 1991.

Mariscal, Weeks, McIntyre & Friedlander by Michael S. Rubin and Leonce A. Richard, Phoenix, for plaintiff-appellant.

Mangum, Wall, Stoops & Warden by Daniel J. Stoops and Robert W. Warden, Flagstaff, for defendant-appellee.

## OPINION

GERBER, Judge.

Sears Consumer Financial Corporation (Sears) appeals from summary judgment entered in favor of Thunderbird Products (Thunderbird). The issues presented concern allocating liability under the Uniform Commercial Code (U.C.C.) between parties who were innocently unaware of the other's dealings with a boat in which each thought it had the primary interest.

## HISTORY

Thunderbird Products, an Indiana corporation, manufactures and sells motor boats. In late 1985, Thunderbird sold a 1986 Formula F 25PC 25–foot cabin cruiser (the boat) to Glen Canyon Marine, a boat dealer in Page, Arizona, for it to sell at retail. ITT Commercial Finance (ITT) financed the sale to Glen Canyon Marine. ITT filed a blanket U.C.C. financing statement signed by Glen Canyon Marine as debtor.

When Glen Canyon Marine went out of business in 1986, Thunderbird bought ITT's interest in the secured debt on the boat. Thunderbird thereafter engaged D & J Marine and RV Services (D & J), also in the business of selling new and used boats in Page, to repossess the boat from Glen Canyon Marine and temporarily store it on Thunderbird's behalf.[1] While Thunderbird knew that D & J was in the boat sales business, Thunderbird did not authorize D & J to sell the boat but only to store it.

D & J nonetheless displayed the boat for public sale. On September 12, 1986, it entered into an agreement to sell it to Eugene Abernathy for $57,240.00. Sears agreed to lend Abernathy $40,000.00 to complete his purchase of the boat. Neither Abernathy nor Sears had knowledge of Thunderbird's claim to the boat. Abernathy created a purchase money security interest in the boat in favor of Sears. As part of the same transaction, D & J's general partners executed an "Indorsement" on the payment order form issued by Sears, warranting that D & J had delivered to the appropriate state agency the applications and fees necessary to secure a proper recording of Sears' lien on the boat as a valid first lien. Although Sears paid the $40,000.00 loan proceeds to D & J, the documents necessary to perfect Sears' purchase money security interest in the boat were never filed.[2] D & J delivered neither the boat nor a certificate of title to Abernathy. D & J paid none of the sales proceeds to Thunderbird.

The boat continued to sit in storage at Page. Unaware of the transactions between D & J and Abernathy and assuming continued ownership of the boat, Thunderbird took possession of it from D & J in October 1986 and stored it elsewhere in Page until February 1987. Thunderbird then transported the boat back to its factory in Indiana and resold it to Renton Marine Center in Trenton, New Jersey. Abernathy subsequently defaulted on his Sears loan. Sears then looked to the boat for its security. Only then did it discover that Thunderbird had previously repossessed it.

In January 1988, Sears brought this action against Thunderbird for conversion. With some justification, each party portrayed itself in the trial court as an innocent interest holder wronged by the other's unauthorized interference in the course of its security interest in the boat. Sears and Thunderbird filed cross-motions for summary judgment. After argument, the trial court ruled for Thunderbird without stating any reasons. Sears timely appealed.

## RIGHT OF SECURED PARTY TO MAINTAIN ACTION FOR CONVERSION OF COLLATERAL

Thunderbird contends that Sears lacked a sufficient possessory interest in the boat to maintain a conversion action against Thunderbird. Thunderbird argues that Arizona follows the rule that a financier arranging the purchase of goods does not thereby obtain a possessory interest sufficient to maintain an action for conversion. Thunderbird also argues that Sears cannot maintain an action for conversion against Thunderbird because Sears' only legitimate objective is to collect its debt from Abernathy.

---

**1.** It is unclear from the record whether Thunderbird accepted the boat in satisfaction of the debt owed by Glen Canyon Marine.

**2.** Sears conceded early in this litigation that its purchase money security interest in the boat "remained unperfected" due to D & J's failure to file the necessary documents. We accordingly take that as a given fact on appeal. However, under U.C.C. § 9–302(1)(d) [A.R.S. § 47–9302(A)(4) ], a purchase money security interest in a consumer good is perfected automatically without the filing of a financing statement.

■ Conversion is an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another. *Huskie v. Ames Bros. Motor & Supply Co.*, 139 Ariz. 396, 402, 678 P.2d 977, 983 (App.1984). A common law action for conversion may be brought by one who had the right to immediate possession of the chattel at the time of the alleged conversion. *Restatement (Second) of Torts* § 243 (1965), comment b; W. Prosser and W. Keeton, *The Law of Torts* (5th ed. 1984) § 15. According to Prosser and Keeton, one entitled to immediate possession includes "a chattel mortgagee or conditional seller after default." *Id.* at 104. Under Article 9 of the U.C.C., a secured party has sufficient possessory interest to bring a conversion action when the party's debtor defaults. Under U.C.C. § 9–503, a secured party "has on default the right to take possession of the collateral."

■ Secured parties may bring conversion actions against third parties who interfere with their rights in collateral. In *Empire Fire & Mar. Ins. Co. v. First Nat. Bank of Ariz.*, 26 Ariz.App. 157, 546 P.2d 1166 (1976),[3] the court stated that in order to bring an action for conversion, the plaintiff must be entitled to immediate possession of the property. Conversion is an offense against possession of property. *Id.* at 159, 546 P.2d at 1168. On default, a secured party has the right to take possession of the collateral. *Id.* Even if Thunderbird's repossession of the boat from D & J did not convert Sears' interest in the boat, its continued control of the boat after Abernathy defaulted constituted conversion.

This result is not new. A purchase money secured party has a right to recover damages for conversion when the seller's inventory financier takes possession of the collateral from the seller's premises and sells it. *Rex Financial Corp. v. Mobile America Corp.*, 119 Ariz. 176, 580 P.2d 8 (App.1978). Similarly, in *First Nat. Bank of Arizona v. Carbajal*, 132 Ariz. 263, 645 P.2d 778 (1982), the supreme court affirmed summary judgment in favor of a bank on its conversion claim against a wholesaler who repossessed from a motor vehicle retailer a van in which the bank had a purchase money security interest. These cases illustrate that a secured party such as Sears may bring an action for conversion against a repossessing party.

Thunderbird also argues that Sears' alternative claim for recovery of its debt against Abernathy vitiates its conversion claim against Thunderbird. The numerous decisions that Thunderbird cites, however, stand at most for the proposition that a creditor generally cannot recover against the creditor's own debtor for conversion. These cases do not support Thunderbird's contention that conversion is inappropriate when the main object of a plaintiff's claim is collection of a debt. Indeed, that proposition conflicts with the cases permitting secured parties' conversion claims against third parties despite possible contractual claims against the secured parties' debtors.

## DID THUNDERBIRD'S ENTRUSTMENT EXTINGUISH ITS SECURITY INTEREST IN THE BOAT?

■ Sears argues that Thunderbird's perfected security interest in the boat was extinguished pursuant to U.C.C. § 2–403(2) when D & J sold the boat to Abernathy.[4] Section 2–403(2) provides:

Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

U.C.C. § 2–403(3) defines "entrusting" as follows:

'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition ex-

**3.** Cited with approval in 2 White and Summers, *Uniform Commercial Code* (3d ed. 1988) at 584 n. 4.

**4.** For the sake of clarity and uniformity, we will refer wherever appropriate to the applicable sections of the Arizona U.C.C. according to their designation and numbering in the current version of the U.C.C. *Prairie State Bank v. I.R.S.*, 155 Ariz. 219, 220 n. 1, 745 P.2d 966, 967 n. 1 (App.1987).

pressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

U.C.C. § 1-201(9) provides:

'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind....

In response, Thunderbird argues that because Sears itself does not meet the definition of "buyer in ordinary course" and Abernathy is not a party to this suit, Sears has no right to invoke the entrustment doctrine of U.C.C. § 2-403(2).

We disagree with Thunderbird. Rather than claiming that it is a buyer in ordinary course from D & J, Sears bases its conversion claim on the distinct theory that Thunderbird's security interest was extinguished by operation of § 2-403(2) when D & J sold the boat to Abernathy in the ordinary course of business. As a result, only Sears had a security interest in the boat when Thunderbird repossessed it. Thunderbird responds that because D & J did not create Thunderbird's security interest, D & J's sale of the boat to Abernathy had no effect on this original security interest under Article 9. *See* U.C.C. § 9-307(1) (providing that buyer in ordinary course "takes free of a security interest *created by his seller*...."). Thunderbird concludes that its perfected security interest therefore prevailed over Sears' unperfected purchase money security interest in the same collateral. *See* U.C.C. § 9-302(2) (perfected security interest remains perfected after assignment); U.C.C. §§ 9-301(1)(a) and 9-312 (unperfected security interest subordinate to perfected security interest).

We thus have to determine whether Article 2 or Article 9 of the U.C.C. governs

these facts. U.C.C. § 9-307(1) does not apply to these facts because it extinguishes only a security interest created by the seller. It provides:

A buyer in ordinary course of business (subsection (9) of section 1-201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

Contrary to the thrust of Thunderbird's answering brief, Sears does not contend on appeal that Thunderbird's security interest was extinguished pursuant to § 9-307(1). We consider § 9-307(1) only as it bears on the interpretation of U.C.C. § 2-403(2). We must now determine whether § 2-403(2) applies.

The authorities are split on whether U.C.C. § 2-403(2) operates to extinguish an Article 9 security interest.[5] Even the noted commentators James J. White and Robert S. Summers, authors of *Uniform Commercial Code* (3d ed. 1988), are unable to agree. Section 26-16 of their treatise states in part:

Section 2-403 is the Article 2 analogue to 9-307. It, like 9-307, is a bona fide purchase provision designed to protect good faith purchasers from certain prior interests. In certain respects, 2-403 is more generous to subsequent purchasers than is 9-307. So the question: May a subsequent purchaser disappointed under 9-307 fall back on 2-403 and argue that it renders him superior to a prior security interest? We believe the answer is no, and we think that the cases holding to the contrary are in error.

*Id.* at 544. Footnote 2 to this passage, however, states in part: "One of your authors, having been convinced by the analysis of one of his student assistants, disagrees with White and would read 2-403 broadly to protect the innocent purchaser." *Id.* at 544 n. 2.

---

**5.** *See* Note, *Entrustment Under U.C.C. Section 2-403 and Its Implications for Article 9,* 9 Campbell L.R. 407 (1987).

With respect to entrustment by secured parties, Professor Summers offers the better view. It is certainly true that when a secured party is not in control of the collateral and does not acquiesce in its entrustment to a merchant who deals in goods of that kind, the sale to a buyer in the ordinary course of the merchant's business should not affect the secured party's rights in the collateral. However, where the secured party itself entrusts the collateral, or acquiesces in its entrustment as occurred here, § 2–403(2) governs. "Where one of two innocent parties must suffer through the act or negligence of a third person, the loss should fall upon the one who by his conduct created the circumstances which enabled the third party to perpetuate the wrong or cause the loss." *Al's Auto Sales v. Moskowitz*, 203 Okl. 611, 224 P.2d 588, 591 (1950); *see also Mercer v. Braziel*, 746 P.2d 702 (Okla.App.1987).

Comment 2 to § 2–403 supports the view that § 2–403(2) applies to entrustment of collateral by a secured party. It states in part:

As to entrusting by a secured party, subsection (2) is limited by the more specific provisions of section 9–307(1), which deny protection to a person buying farm products from a person engaged in farming operations.

According to Professor White, this comment supports the view that § 2–403(2) is inapplicable to disputes between secured creditors and subsequent purchasers. *See* 2 White and Summers, *Uniform Commercial Code* (3d ed. 1988) § 26–16, at 545. We interpret it differently. By interpreting § 9–307(1) as excepting from the general protection of § 2–403(2) buyers of farm products entrusted by a secured party to persons engaged in farming operations, the comment appears to recognize that other entrusting by secured parties is subject to the rights of buyers in ordinary course under § 2–403(2).

Thunderbird argues that U.C.C. § 9–306(2) precludes the application of § 2–403 to an Article 9 security interest. U.C.C. § 9–306(2) provides:

*Except where this article otherwise provides*, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(Emphasis added). Thunderbird argues that because § 2–403(2) is not part of Article 9, it has no effect on a security interest in entrusted collateral.

This reasoning does not apply to entrustment by a secured party. Comment 3 to § 9–306 states in part:

In most cases when a debtor makes an unauthorized disposition of collateral, the security interest, under prior law and under this article, continues in the original collateral in the hands of the purchaser or other transferee. That is to say, since the transferee takes subject to the security interest, the secured party may repossess the collateral from him or in an appropriate case maintain an action for conversion. Subsection (2) codifies this rule.

This comment indicates that the drafters of Article 9 intended § 9–306(2) to address only transfers of collateral by debtors or their transferees. Contrary to Thunderbird's argument, § 9–306(2) does not override § 2–403(2) when the entrustment is by a secured party.[6]

Thunderbird contends that U.C.C. § 2–403(2) is inapplicable here and that this controversy must be resolved exclusively under the provisions of Article 9. In support of this view, Thunderbird relies on § 2–403(4), which provides:

The rights of other purchasers of goods and of lien creditors are governed by the articles on secured transactions (Article

---

**6.** *See also In re Woods*, 25 B.R. 924 (Bankr.E.D. Tenn.1982) (entrustment by secured party viewed as implicitly "authorizing" disposition of collateral by merchant within U.C.C. § 9–306(2)).

338

9), bulk transfers (Article 6) and documents of title (Article 7).[7]

Section 2–403(4), however, does not apply because Sears is not a lien creditor. Section 9–301(3) provides:

> A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment.

In addition, § 2–403(4) states that the "rights of other purchasers of goods ... are governed by ... (Article 9)." This language indicates that purchasers other than those covered in § 2–403 are governed by Article 9.

Likewise § 2–402(3) does not apply to this case. Section 2–402(3) provides:

> Nothing in this article shall be deemed to impair the rights of creditors of the seller ... under the provisions of the article on secured transactions (Article 9)....

In this case, Thunderbird was a secured creditor of Glen Canyon Marine and not of D & J, the seller of the boat. Section 2–402(3) therefore does not prevent extinguishment of Thunderbird's security interest pursuant to § 2–403(2).

The better reasoned and factually similar cases hold § 2–403(2) applicable to entrustment by a secured party. *See In re Woods,* 25 B.R. 924 (Bankr.E.D.Tenn.1982); *Executive Financial Serv., Inc. v. Pagel,* 238 Kan. 809, 715 P.2d 381 (1986). As the court stated in *Executive Financial Services,*

> Typically, the entruster and the holder of the security interest are separate entities with the security holder not involved in the entrustment. In such a case the security interest would continue in the goods because under [U.C.C. § 2–403(2)] only the "rights of the entruster" would be transferred. Here, however, the security holder is the entruster and its

rights as such are transferred to the buyer.

*Id.* 715 P.2d at 387.

## CONCLUSION

Judgment for Thunderbird is reversed and the trial court is instructed to enter judgment for Sears.

Our conclusion is consistent with the basic goal of the U.C.C. to protect good faith purchasers. *See Martin v. Nager,* 192 N.J. Super. 189, 469 A.2d 519 (1983). A major aim of the U.C.C. is to facilitate the merchantability of property. *Riverside Nat. Bank v. Law,* 564 P.2d 240 (Okla.1977). In this case, Thunderbird, as a secured party, entrusted possession of the boat to D & J, a merchant dealing in this kind of goods. Under the explicit language of § 2–403(2), Thunderbird unwittingly thereby gave D & J the power to transfer all Thunderbird's rights in the boat to Abernathy. D & J exercised that power by selling the boat to Abernathy in the ordinary course of its business. The sale by D & J to Abernathy extinguished Thunderbird's perfected security interest in the boat. Accordingly, Thunderbird at that point lost any legal right to repossess it, though not, of course, its own claim for conversion against D & J. Sears acquired the right to possession of the boat under its purchase money security interest with Abernathy. Thunderbird's repossession of the boat constituted conversion of Sears' interest even though Thunderbird acted without knowledge of Sears' interest. As between these two innocent parties, U.C.C. § 2–403(2) places liability on the party whose conduct first allowed this boat to set sail on this uncharted voyage.

BROOKS, P.J., and EHRLICH, J., concur.

---

7. Arizona's enactment of the U.C.C. substitutes "chapter" for "article" throughout.