IN THE COURT OF APPEALS
STATE OF ARIZONA

FILED BY CLERK

JAN 25 2012

COURT OF APPEALS
DIVISION TWO

DAYKA & HACKETT, LLC, a
California limited liability company,

Plaintiff/Appellee,

v.

DEL MONTE FRESH PRODUCE
N.A., INC., a Florida corporation,

Defendant/Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

2 CA-CV 2011-0076
DEPARTMENT A

O P I N I O N

APPEAL FROM THE SUPERIOR COURT OF SANTA CRUZ COUNTY

Cause No. CV08351

Honorable Kimberly A. Corsaro, Judge

AFFIRMED; REMANDED

Waterfall, Economidis, Caldwell, Hanshaw
& Villamana, P.C.
  By D. Michael Mandig and Corey B. Larson

Tucson
Attorneys for Plaintiff/Appellee

Mariscal, Weeks, McIntyre & Friedlander, P.A.
  By Richard A. Friedlander, Michael S. Rubin,
  and Andrew L. Pringle

Phoenix

and

K & L Gates, LLP
  By David R. Fine and Amy L. Groff

Harrisburg, PA
Pro Hac Vice
Attorneys for Defendant/Appellant

B R A M M E R, Judge.

¶1 Del Monte Fresh Produce, N.A., Inc. (Del Monte) appeals from the trial court's order granting summary judgment to Dayka & Hackett, LLC (D&H) on its claims of lien priority and conversion regarding the proceeds from the sale of Rolando Castelo de la Rosa and Maria Olivia Aguirre Ramos's (growers) 2008 table grape crop. Del Monte argues its security interest in the crop had priority over D&H's security interest in the same collateral, it had a right of recoupment pursuant to A.R.S. § 47-9404(A)(1), it did not engage in conversion because it had acted in accordance with A.R.S. §§ 47-9610 and 47-9615, and D&H had permitted it to sell the collateral without first having made a demand for possession. We affirm.

## Factual and Procedural Background

¶2 We view the facts in the light most favorable to the party against whom summary judgment was entered, drawing all justifiable inferences in its favor. *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, 221 Ariz. 515, ¶ 2, 212 P.3d 853, 855 (App. 2009). In January 2007, D&H agreed to finance and sell the growers' 2007 grape crop to be grown in Sonora, Mexico. D&H entered into marketing and security agreements with the growers and, on January 18, 2007, it filed a financing statement pursuant to A.R.S. § 47-9307(C) in Washington, D.C. to perfect its interest. The security agreement granted D&H an interest in the 2007 and any future crops the growers produced together with any proceeds generated by the sale of the crops. The 2007 grape crop was not profitable and

2

the growers were unable to repay to D&H what they owed. The growers subsequently defaulted on their obligations to D&H, eventually owing $688,587.71.

¶3 Del Monte, unaware of the relationship between the growers and D&H, advanced the growers funds to produce their 2008 crop. After conducting a lien search of the public registry in Sonora, Del Monte entered into a marketing and security agreement with the growers. Under its marketing agreement, Del Monte was obligated to market and sell the crop it was advancing the growers funds to raise, and to pay the growers a portion of the sales proceeds. The growers granted Del Monte a security interest in collateral, which included the 2008 crop and any proceeds from its sale. In May 2008, Del Monte registered its security interest with the public registry in Sonora.

¶4 On April 24, 2008, D&H sent Del Monte a letter informing Del Monte of its security interest in the growers' crops. Del Monte responded with a letter on May 14, 2008 asserting a superior interest in the crops. Del Monte marketed the 2008 crop and collected and retained all the sales proceeds.

¶5 D&H filed a complaint against the growers and Del Monte seeking to enforce its security interest in the growers' 2008 crop and its proceeds. The trial court granted summary judgment in favor of D&H on its conversion claim and awarded it damages of $688,587.71, the amount the growers owed D&H. The judgment also declared D&H's security interest in the 2008 crop and proceeds to be superior to Del Monte's interest and denied Del Monte's asserted right of recoupment. The court denied

3

Del Monte's motion for reconsideration and entered a final judgment pursuant to Rule 54(b), Ariz. R. Civ. P. This appeal followed.

<strong>Discussion</strong>

**¶6** Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). And a trial court should grant a motion for summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). "On appeal from a summary judgment, we must determine de novo whether there are any genuine issues of material fact and whether the trial court erred in applying the law." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 8, 965 P.2d 47, 50 (App. 1998).

**Priority**

**¶7** Del Monte argues its security interest in the 2008 crop was superior to and had priority over D&H's security interest because D&H did not perfect its interest by taking possession of the collateral or by filing notice of its interest in a proper jurisdiction. D&H recorded its security interest with the Registrar of Deeds in Washington, D.C., on January 18, 2007. Del Monte recorded its security agreement in Mexico's Real Property Registry and Movables Registry on May 7, 2008 in Hermosillo,

4

Sonora, Mexico. To assess which party's filing was effective to perfect its interest and give it priority, we must determine whether United States or Mexican law applies.

¶8 The Uniform Commercial Code (UCC) as adopted in Arizona provides that, "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection . . . and the priority of a security interest in collateral." A.R.S. § 47-9301(1). An individual generally "is located at the individual's principal residence," A.R.S. § 47-9307(B)(1), and it is undisputed that the growers are residents of Sonora, Mexico. However, § 47-9307(B) applies only if:

> [the] debtor's residence . . . is located in a jurisdiction whose law generally requires information concerning the existence of a nonpossessory security interest to be made generally available in a filing, recording or registration system as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral.

§ 47-9307(C). If the requirements of § 47-9307(C) are not met, the debtor is considered to be "located in the District of Columbia." *Id.*

¶9 Therefore, whether priority is determined by United States or Mexican law depends on whether, during the relevant time period, Mexican law "generally require[d]" such information "to be made generally available in a filing, recording or registration system" in order to obtain priority. *See id.* To determine whether Mexico's law meets the test in § 47-9307(C), we "may consider any relevant material or source, including testimony." Ariz. R. Civ. P. 44.1. The issue is treated as a question of law, *id.*, which we review de novo, *Green v. Lisa Frank, Inc.*, 221 Ariz. 138, ¶ 48, 211 P.3d 16, 33 (App. 2009).

5

¶10 Both parties presented expert testimony regarding whether Mexican law during the relevant period satisfied the conditions set forth in § 47-9307(C). D&H expert Dale Furnish has authored articles and book chapters on Mexican law, has consulted with the Mexican government regarding the amendment of its laws, and has assisted in drafting Arizona's secured transactions laws and the Organization of American States model on secured transactions. According to Furnish, Mexican law in 2007 and 2008 was a "crazy quilt" of different security devices that did not meet the requirements of § 47-9307(C). Checking public records in Mexico provided no assurance of the priority of an interest because it was "possible for several common types of credit guaranties to be unrecorded, and still gain priority over even a recorded security interest." According to Furnish, one of the major flaws in the Mexican registration system preventing the growers from being "located" in Mexico is that it did not include a provision stating it applied to any device acting in practical effect as a security interest.

¶11 D&H expert Ramón Bringas Acedo has practiced law in Mexico for over twenty-eight years representing borrowers, growers, finance companies, and distributors in crop-financing transactions. He agreed that Mexican law does not "generally require[]" filing as described in § 47-9307(C), noting that a financer like Del Monte, to perfect its interest in a crop, need only "notify any third party who may be in possession of that same fruit . . . such that perfection of the guaranty . . . is not the result of recording in any registry but rather by way of notification."

6

¶12 Amendments to Mexico's laws in 2009 recognized and defined a "security interest," created a single federal registry for recording security interests, and generally required that all security interests be recorded in the federal registry. Furnish offered that the Mexican system before the 2009 amendments "resemble[d] the United States system prior to the 1962 advent of UCC Article 9." Both Furnish and Bringas Acedo opined that once the 2009 amendments are implemented they will, for the first time, create a system that "'generally requires' recording to establish priority between competing claims or security interests in personal property."

¶13 Furnish added that "[e]very authoritative source available agrees that Mexico did not have . . . a law" satisfying § 47-9307(C) in 2007 and 2008. For example, he discussed a 2008 article in evidence authored by Arnold S. Rosenberg and published in the book *Practice Under Article 9 of the UCC* by the UCC Committee of the American Bar Association (ABA). The article classified foreign filing systems into category "A"— jurisdictions clearly satisfying the test in U.C.C. § 9-307(c)[1]—through category "D"— jurisdictions that clearly fail the test. It classified Mexico as a category "D" jurisdiction because "filing is a sufficient but unnecessary step due to the existence of alternative methods of perfecting the secured party's interest without filing."

¶14 Additional authority supports Furnish's and Bringas Acedo's conclusions. A 2006 article by Rosenberg reiterates the concern that "Mexican law recognizes various types of nonpossessory security devices in personal property that do not require

---

[1]U.C.C. § 9-307(c) is the equivalent of Arizona's § 47-9307(C).

registration yet may take priority over lien creditors and registered nonpossessory pledges." Arnold S. Rosenberg, *Where to File Against Non-U.S. Debtors: Applying UCC § 9-307(c) [Rev] to Foreign Filing, Recording, and Registration Systems*, 39 UCC L.J., no. 2, 2006, art. 1. A 2004 article recognized that "current mechanisms [in Mexico] undermine secured transactions . . . [and] create secret liens, making it difficult for a secured party to determine if potential debtor's assets are encumbered." Alejandro Lopez-Velarde & John M. Wilson, *A Practical Point-by-Point Comparison of Secured Transactions Law in the United States and Mexico*, 36 UCC L.J., no. 4, 2004, art. 1. And a recent article by Furnish noted that, even after reforms in 2003, "the pre-existing secret liens and diverse security mechanisms continued unabated." Dale Beck Furnish, *The Impact of the Organization of American States Model Law of Secured Transactions in Latin America: The First Decade*, 43 UCC L.J., no. 4, 2011, art. 1. Another article discussing the 2009 reforms noted that one motivation was Mexican companies' difficulty attracting secured lending from the United States "because of concerns as to the reliability of Mexican . . . systems for filing and perfecting security interests . . . in personal . . . property or goods." John E. Rogers & Ramiro Rangel, *Mexico's Unified Secured Transactions Registry: Implications for Secured Lending, Bankruptcy and Cross-Border Filings (U.C.C. § 9-307)*, 43 UCC L.J., no. 4, 2011, art. 3. The authors suggested Mexico's recent reforms may bring it into compliance with U.C.C. § 9-307(c) and "may require U.S. lenders relying on accounts receivable collateral . . . to re-examine their reliance on the filing of a UCC-1 financing statement in the District of Columbia

8

pursuant to U.C.C. § 9-307(c)," noting "the traditional method of perfecting such security interests" has been to file with the Recorder of Deeds in the District of Columbia. *Id.*

¶15      Del Monte expert Steven Weise specializes in UCC secured transactions. He was the chairperson of the ABA committee on Article 9, and is a member of the editorial board for the UCC. He is not an expert on Mexican law, and based his opinions on the testimony of Bringas Acedo, Furnish, and a Mexican attorney hired by Del Monte. Although he deferred to the interpretation of Mexican law offered by other experts, Weise testified that, pursuant to § 47-9307(C), a jurisdiction's registration system should be examined with regard to the specific collateral at issue, rather than for nonpossessory secured interests as a whole. Based on his interpretation of the other experts' descriptions of the Mexican system, he contended the Mexican security interest devices discussed by Bringas Acedo were either similar to the UCC or irrelevant to grape crops. He further opined that, based on his conversations with Del Monte's Mexican attorney, a security interest in crops must be filed in Mexico to gain priority over third parties.[2]

¶16      Del Monte urges us to accept Weise's interpretation of § 47-9307(C) as collateral-specific. There is no Arizona case law addressing the issue. One article by Rosenberg on the topic acknowledged it is an "unsettled question" whether U.C.C. § 9-307(c) should be interpreted to require a system for the specific collateral or for

---

[2]Portions of Weise's declaration suggest it is relevant that filing was available or sufficient in Mexico in some circumstances. However, to satisfy § 47-9307(C), a jurisdiction must "generally require[]" filing as a condition of obtaining priority, not merely allow it.

nonpossessory security interests as a whole, but noted a comprehensive test is the more likely interpretation. Rosenberg, *Where to File*, *supra*. One reason supporting this prediction is that U.C.C. § 9-307 cmt. 3 appears to support a comprehensive interpretation of the phrase "generally requires,"[3] stating in relevant part:

> The phrase "generally requires" is meant to include legal regimes that generally require notice in a filing or recording system as a condition of perfecting nonpossessory security interests, but which permit perfection by another method . . . in limited circumstances. A jurisdiction that has adopted this Article or an earlier version of this Article is such a jurisdiction.

¶17            Policy implications also favor interpreting § 47-9307(C) as requiring the jurisdiction's system to satisfy the test generally. One risk of a comprehensive test is that, if a jurisdiction's system satisfies § 47-9307(C) generally but leaves a void for a particular type of collateral, a lender could find it impossible to perfect a security interest in that type of collateral because it would be required to file in that jurisdiction. *See* Rosenberg, *Where to File*, *supra*. However, a comprehensive approach "has the advantage of clarity and might reduce transaction costs," and a collateral-specific approach would require secured parties "to retain foreign counsel in almost all cases to ascertain foreign law on the subject." *Id.* As noted in Rosenberg's 2008 article, admitted in evidence during Furnish's testimony, under a collateral-specific approach a debtor

---

[3]Although Del Monte argues the phrase "with respect to the collateral" in § 47-9307(C) favors a collateral-specific approach, we think it more likely the phrase merely refers to the "rights of a lien creditor" in collateral and does not modify the earlier clause, especially when read in conjunction with U.C.C. § 9-307 cmt. 3.

10

could be "located" in more than one jurisdiction and, "in a single transaction, a secured party might have to file in the limited-purpose registry to perfect as to some security interests or collateral, while having to file in the District of Columbia to perfect as to others." For these reasons, and based on the comments to the UCC, we interpret § 47-9307(C) to adopt the comprehensive approach, requiring a system for perfecting nonpossessory security interests as a whole.

¶18      The expert testimony and secondary authority on the topic establish that Mexico's law in 2007 and 2008 did not meet the requirements of § 47-9307(C) and, therefore, the growers for the purpose of perfecting security interests in their property were located in the District of Columbia pursuant to the statute. Thus, D&H perfected its security interest by filing in the District of Columbia, and its security interest in the 2008 crop and its proceeds had priority over Del Monte's conflicting, unperfected security interest. *See* A.R.S. § 47-9322(A)(2) ("A perfected security interest . . . has priority over a conflicting unperfected security interest . . . .").

**Conversion**

¶19      Del Monte argues it cannot be liable for conversion because it sold the grapes and applied the proceeds following the growers' default in accordance with A.R.S. §§ 47-9610 and 47-9615. Del Monte contends the growers defaulted on their obligations to it by breaching the marketing agreement. Section 47-9610 entitles a secured party to dispose of collateral upon default and § 47-9615 provides for disposition

11

of the cash proceeds. We conclude, however, under these circumstances neither §§ 47-9610 nor 47-9615 preclude liability for conversion.

**¶20** The official comments to the UCC note that non-UCC law governs a junior secured party's liability to a senior secured party for conversion when the junior party is in possession of collateral, noting that normally "a junior who refuses to relinquish possession of collateral upon the demand of a secured party having a superior possessory right . . . would be liable in conversion." U.C.C. § 9-609 cmt. 5 (2001). Conversion is "'an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another.'" *Case Corp. v. Gehrke*, 208 Ariz. 140, ¶ 11, 91 P.3d 362, 365 (App. 2004), *quoting Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 166 Ariz. 333, 335, 802 P.2d 1032, 1034 (App. 1990). Because a secured party has a right to take possession of collateral on default, its possessory interest is sufficient to maintain an action for conversion. *Id.* And money "can be the subject of a conversion claim if the money 'can be described, identified or segregated, and an obligation to treat it in a specific manner is established.'" *Id.*, *quoting Autoville, Inc. v. Friedman*, 20 Ariz. App. 89, 91, 510 P.2d 400, 402 (App. 1973). A secured party also can bring a conversion action against third parties that interfere with its rights in the collateral. *Sears*, 166 Ariz. at 335, 802 P.2d at 1034.

**¶21** The growers defaulted on their obligations to D&H by failing to pay D&H and by pledging collateral to Del Monte without D&H's consent. D&H explicitly had a security interest both in the growers' future crops and any proceeds from those crops.

12

When the growers defaulted, D&H had the right under the security agreement to demand payment and take possession of the collateral. The growers already had defaulted on their obligations to D&H when Del Monte took possession of the crops, sold them, and retained the sales proceeds. By doing so, Del Monte interfered with D&H's rights to the collateral and its proceeds and D&H had a valid conversion claim. *See Sears*, 166 Ariz. at 335, 802 P.2d at 1034; *see also Gehrke*, 208 Ariz. 140, ¶ 11, 91 P.3d at 365. Moreover, the proceeds from the sale of the crops properly are the subject of D&H's conversion claim because they are identifiable and because D&H's security agreement with the growers required them to pay D&H the proceeds from the sale of the collateral. *See Gehrke*, 208 Ariz. 140, ¶ 11, 91 P.3d at 365 (money can be subject of conversion claim if it can be described, identified, and obligation to treat in specific manner established); *see also Empire Fire & Marine Ins. Co. v. First Nat'l Bank of Ariz.*, 26 Ariz. App. 157, 159, 546 P.2d 1166, 1168 (1976) (sale of vehicle by dealer and retention of proceeds constituted conversion where bank had both security interest in vehicle and right to possession upon default). Accordingly, Del Monte properly was held liable for conversion of the crop's sales proceeds.

¶22 Sections 47-9610 and 47-9615 do not alter the result here. A secured party is entitled to take possession of the collateral after default, A.R.S. § 47-9609, dispose of the collateral, § 47-9610, and apply the proceeds of the disposition, § 47-9615. Because more than one secured party may be entitled to possession of collateral, conflicting rights among secured parties are resolved by the priority rules. *See* U.C.C. § 9-609 cmt. 5 ("[A]

13

senior secured party is entitled to possession as against a junior claimant."). Here, D&H and Del Monte each had a security interest in the collateral and proceeds. And the growers defaulted on their agreements with both. But, as discussed above, D&H's security interest had priority over Del Monte's and D&H was entitled to dispose of the collateral and apply the proceeds pursuant to §§ 47-9610 and 47-9615. Del Monte's interference with that right constituted conversion. *See Gehrke*, 208 Ariz. 140, ¶ 11, 91 P.3d at 365.

¶23 Del Monte contends the official comment five to U.C.C. § 9-610 precludes liability for conversion. We disagree. Comment five states: "The exercise of [the right to dispose of collateral after default] by a secured party whose security interest is subordinate to that of another secured party does not of itself constitute a conversion or otherwise give rise to liability in favor of the holder of the senior security interest." U.C.C. § 9-610 cmt. 5 (2001). This is so because normally "the disposition by a junior would not cut off a senior's security interest" and "the junior's receipt of the cash proceeds would not violate the rights of the senior," instead the senior's secured interest "ordinarily will survive the disposition by the junior." *Id.* But here, although D&H's rights in the crops were cut off when Del Monte sold them, D&H also had rights to the sales proceeds, which survived the sale, and Del Monte violated those rights by retaining those proceeds. *See* 7 U.S.C. § 1631(d) (buyer of farm product in ordinary course of business takes free of security interest). Moreover, the same comment further provides "[t]he holder of a senior security interest is entitled, by virtue of its priority, to take

14

possession of collateral from the junior secured party and conduct its own disposition" following default. U.C.C. § 9-610 cmt. 5. And "[i]t is well settled that a secured creditor, upon default of the debtor, has an immediate right to possession of the collateral" and can maintain an action for conversion if the collateral is transferred. *Citicorp Homeowners, Inc. v. Western Sur. Co.*, 131 Ariz. 334, 336, 641 P.2d 248, 250 (App. 1981). D&H was entitled to possession of the collateral but Del Monte discharged D&H's interest by selling the collateral and retaining the proceeds.

¶24 Del Monte further contends it cannot be liable for conversion because D&H encouraged it to sell the grapes and did not demand possession. But D&H was entitled to immediate possession of the collateral upon default and that right is sufficient to maintain an action for conversion. *See Gehrke*, 208 Ariz. 140, ¶ 11, 91 P.3d at 365. And the authority Del Monte cites does not suggest a claim for conversion is precluded if a senior secured party fails to demand possession of the collateral under circumstances similar to those presented here. *See Ins. Co. of N. Am. v. Gen. Elec. Credit Corp.*, 119 Ariz. 97, 100, 579 P.2d 601, 604 (App. 1978) (no possessory interest to support conversion claim where secured party expressed desire not to assert possessory interest and filed claim joining in request for appointment of receiver to assume possession of inventory); *W. Coach Corp. v. Kincheloe*, 24 Ariz. App. 55, 58, 535 P.2d 1059, 1062 (1975) (demand and refusal required for conversion action where defendants "had not dealt with the [collateral] in a manner inconsistent with the rights of the one entitled to possession").

¶25 Moreover, the record reflects D&H did demand possession of the collateral. In its April 24 letter, D&H notified Del Monte it was "entitled to take possession of the grape crop and the proceeds of its sale." And it "insist[ed] that steps be taken immediately to acknowledge [its] interest and that a means be agreed upon to protect its interest by payment from the current season's sale proceeds." The letter clearly expressed D&H's security interest in both the collateral and any proceeds from its sale. And as the trial court noted, Del Monte acted wrongfully by retaining the sales proceeds. Therefore, because Del Monte exercised control over the grape crops and retained the sales proceeds in a manner inconsistent with D&H's senior security interest in those crops and proceeds, the trial court did not err in awarding D&H summary judgment on the conversion claim. *See Gehrke*, 208 Ariz. 140, ¶ 11, 91 P.3d at 365.

**Right of Recoupment**

¶26 Del Monte further argues that, even if its security interest was inferior to D&H's security interest, it is entitled pursuant to A.R.S. § 47-9404 to a right of recoupment under its marketing agreement with the growers. Section 47-9404(A)(1) provides that the rights of an assignee are subject to "[a]ll terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract." Del Monte contends the growers were the "assignors" and D&H was the "assignee" because the growers had granted D&H a security interest in the crops and proceeds. Del Monte further contends it is the "account debtor" because it was obligated to pay the growers the sales proceeds from the

16

grapes it sold.[4]  Consequently, it asserts, under § 47-9404, D&H's rights are subject to the agreement between Del Monte and the growers, which included a right of recoupment.

¶27        The trial court concluded that § 47-9404 did not apply because "[Del Monte] is not suing to enforce an assignment of Grower's rights under the [marketing agreement]."  We agree.  Section 47-9404 does not apply in actions for conversion because "the basis for a conversion [action] is the secured party's superior property interest in the inventory itself, not the assignment of the account held by the debtor." *United States v. Handy & Harman*, 750 F.2d 777, 786 (9th Cir. 1984).  Here, D&H brought a conversion action against Del Monte asserting its superior security interest in the grape crops and their sales proceeds.  It did not assert an interest in the growers' account with Del Monte, instead asserting an interest in the crops and proceeds. Therefore, D&H was not "merely the assignee of an account against which setoffs are generally permissible," rather it had a senior security interest in the crops and their sales proceeds.  *See In re Commercial Reprographics, Inc.*, 95 B.R. 174, 180 (Bankr. E.D. Cal.

---

[4]Del Monte contends the trial court erred in relying on *J.R. Simplot Co. v. Sales King Int'l, Inc.*, 17 P.3d 1100 (Utah 2000), because that court, Del Monte asserts, "plainly misunderstood the roles of the parties" and the terms "account debtor," "assignor," and "assignee."  However, this argument is not relevant here because we determine § 47-9404 is inapplicable.

1988) (discussing *Handy & Harman*). Therefore, § 47-9404 does not entitle Del Monte to a right of recoupment against D&H's claim for conversion.[5]

## Disposition

¶28       For the foregoing reasons, we affirm. Both parties request attorney fees on appeal pursuant to A.R.S. § 12-341.01(A). We grant D&H, as the prevailing party in this contract action, its reasonable attorney fees upon its compliance with Rule 21, Ariz. R. Civ. App. P. We remand this matter to the trial court to take action consistent with this decision and address any remaining issues, including any motion for sanctions pursuant to Rule 68, Ariz. R. Civ. P.


/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge


CONCURRING:


/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge


/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

---

[5]Del Monte also asks this court to vacate the award of attorney fees and costs to D&H. The only argument supporting its request is that the entry of summary judgment in favor of D&H was in error. Because we affirm the judgment, we deny Del Monte's request to vacate the attorney fee award.

18