NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

METRO PHOENIX BANK INC,
*Plaintiff/Appellee/Cross-Appellant*,

*v.*

RPM PRIVATE WEALTH LLC, et al.,
*Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 19-0106
FILED 3-19-2020

Appeal from the Superior Court in Maricopa County
No. CV2016-002429
The Honorable Hugh E. Hegyi, Judge *Retired*

**AFFIRMED IN PART, VACATED AND REMANDED IN PART**

COUNSEL

May, Potenza, Baran & Gillespie, P.C., Phoenix
By Christopher B. Ingle, Michelle L. Mozdzen
*Counsel for Plaintiff/Appellee/Cross-Appellant*

McCarthy Law PLC, Scottsdale
By Kevin F. McCarthy, Jacob W. Hippensteel
*Counsel for Defendants/Appellants/Cross-Appellees*

---

**MEMORANDUM DECISION**

---

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Judge Diane M. Johnsen joined.[1]

---

**T H U M M A**, Judge:

**¶1**        RPM Private Wealth LLC (RPM) and Raymond G. and Marzita Brehm, individually and in their capacities as trustees of the Three Musketeers Trust (collectively Appellants), challenge the superior court's (1) entry of summary judgment in favor of Metro Phoenix Bank Inc. on Metro's claims and Appellants' counterclaims; (2) denial of sanctions and (3) denial of their motion for leave to amend the complaint. Metro cross-appeals the court's fee award. This court affirms on all issues raised by RPM but vacates the fee award and remands for further consideration.

## FACTS AND PROCEDURAL HISTORY

**¶2**        In December 2014, Metro extended a $50,000 line of credit to RPM. The parties documented the transaction in a Promissory Note, a Commercial Security Agreement and a Business Loan Agreement. The Brehms separately guaranteed the line of credit personally and as trustees. Collectively, these documents are referred to as the Loan Documents.

---

[1] Judge Johnsen was a sitting member of this court when the matter was assigned to this panel of the court. She retired effective February 28, 2020. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and pursuant to A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court has designated Judge Johnsen as a judge pro tempore in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to this panel during her term in office.

¶3        The Promissory Note grants Metro, as lender, a setoff right against other RPM-owned accounts:

> To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

The Commercial Security and Business Loan Agreements contain virtually identical terms, while the guaranties grant Metro similar rights against all accounts held by the Brehms or the Three Musketeer Trust.

¶4        RPM defaulted on the line of credit by failing to timely repay the loan. On March 10, 2016, Metro, through counsel, emailed a letter to RPM stating that it had "exercised its right to offset the amount owed" against an RPM-owned account (the Setoff Account). Appellants objected, asserting in an emailed letter on March 11, 2016 that the Setoff Account was a "trust account" and that the funds therein did not belong to RPM. In response, Metro's counsel emailed RPM's counsel later that day that the funds were "released based on avowal . . . that [they] belong entirely to third parties."

¶5        Metro sued Appellants, alleging breach of contract, and Appellants counterclaimed, alleging breach of contract and conversion. Metro moved for summary judgment on its claim and on the counterclaims, arguing (1) RPM conceded liability on the loan; (2) Appellants could show no breach of the Loan Documents or any resulting damages and (3) there was no conversion because the setoff "was contemplated, but then reversed at Defendants' request before it posted to the account." Metro offered account statements to show the setoff "was cancelled before the withdrawal

of the funds posted . . . , meaning that no funds were actually withdrawn from the account."

**¶6**　　　　In December 2017, after briefing Metro's summary judgment motion, Appellants moved for sanctions against Metro and its counsel. *See* Ariz. R. Civ. P. 11 (2020).[2] Appellants contended Metro's position that the setoff never took place contradicted its earlier position that the setoff had been reversed. They also contended counsel failed to conduct a reasonable inquiry into Metro's prior admission that the setoff had occurred.

**¶7**　　　　In January 2018, the superior court granted summary judgment for Metro and denied the request to impose Rule 11 sanctions. Metro filed an application seeking more than $81,000 in attorneys' fees. In April 2018, Appellants moved for leave to amend, to add counterclaims for consumer fraud, fraud and negligent misrepresentation. The court ordered Metro to file an amended fee application with unredacted billing statements. When Metro did so, it increased the claim to $111,851.50, stating it had inadvertently omitted fees from December 2017 and January 2018.

**¶8**　　　　The superior court denied Appellants' motion for leave to amend, finding the request came "more than two years after the Complaint was filed, more than sixteen months after the parties' agreed deadline to move to amend, and two and a half months after the time set for trial to begin in this matter." The court then awarded Metro $25,000 in fees and entered final judgment.

**¶9**　　　　Appellants timely appealed, and Metro timely cross-appealed the fee award. This court has jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

I.　　**Appellants' Appeal.**

　　　A.　**The Superior Court Did Not Err in Granting Summary Judgment For Metro on Appellants' Counterclaims.**

**¶10**　　　　Although Appellants do not challenge the entry of summary judgment against them on Metro's breach of contract claim, they challenge the court's ruling rejecting their counterclaims on various grounds. The

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

superior court granted summary judgment for Metro on those counterclaims because Appellants (1) failed to disclose any cognizable damages and (2) the purported setoff (if it occurred) was authorized by the Loan Documents. This court reviews de novo whether summary judgment is warranted, including whether genuine issues of material fact exist and whether the trial court properly applied the law. *Dreamland Villa Community Club, Inc. v. Raimey*, 224 Ariz. 42, 46 ¶ 16 (App. 2010). The facts are construed in favor of Appellants. *Melendez v. Hallmark Ins. Co.*, 232 Ariz. 327, 330 ¶ 9 (App. 2013). This court "will affirm summary judgment if it is correct for any reason supported by the record." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 329 ¶ 14 (App. 2014).

### 1.      Breach of Contract Counterclaim.

**¶11**      Even if, as Appellants claim, there were disputed issues of material fact as to whether the Setoff Account was a "trust account" for which setoff would be barred by law, this court may affirm summary judgment if it is correct for any reason supported by the record. *Id*. at 329 ¶ 14. Thus, this court considers the alternative ground of whether Appellants failed to properly disclose their claimed damages.

**¶12**      In opposing Metro's motion for summary judgment, Appellants had the burden to provide admissible evidence "set[ting] forth specific facts showing a genuine issue for trial." Ariz. R. Civ. P. 56(e). For damages, Appellants needed to "set forth specific facts," *id.*, establishing "a computation and measure" of damages, Ariz. R. Civ. P. 26.1(a)(7), with "reasonable certainty," "supply[ing] some reasonable basis for computing the amount of damage . . . with such precision as, from the nature of [their] claim and the available evidence, [wa]s possible," *Gilmore v. Cohen*, 95 Ariz. 34, 36 (1963). The superior court properly concluded Appellants failed to meet this standard.

**¶13**      In granting Metro's motion for summary judgment, the superior court noted that, just three weeks before trial, Appellants had disclosed "no calculation [of] damages" allegedly arising from their counterclaims.[3] Appellants contend they properly disclosed their damages stemming from the alleged setoff. But, during oral argument on the motion, Appellants conceded they had not disclosed any damage calculation.

---

[3] Although Brehm requested additional time to provide supplemental disclosures, the ruling denying that request is not challenged on appeal.

Indeed, the only damages evidence in the summary judgment record is Mr. Brehm's testimony that

> (1) the trust between himself, his employees, and his broker was damaged;
>
> (2) he suffered "[l]ots of migraines in the following two months," which resulted in "a couple doctor visits;"
>
> (3) his broker "said she didn't sleep for two weeks;" and
>
> (4) he incurred unspecified expenses in transferring his and RPM's other accounts to a different bank, although Metro did not require him to do so.

¶14 "Generally, the non-breaching party to a loan agreement" can recover as damages "the amount that would place him in the same position in which he would have been had the contract been performed." *Great Western Bank v. LJC Dev., LLC*, 238 Ariz. 470, 480–81 ¶ 36 (App. 2015). Appellants made no effort on summary judgment to quantify the damages they contended they incurred as a result of the breach. *See, e.g., All American School Supply Co. v. Slavens*, 125 Ariz. 231, 233 (1980) ("Arizona has long held that damages for breach of contract are those damages which arise naturally from the breach itself or which may reasonably be supposed to have been within the contemplation of the parties at the time they entered the contract."). Nor have they provided any authority showing they would be entitled to recover emotional distress damages on their breach of contract counterclaim. *See* Restatement (Second) of Contracts § 353 cmt. a (1981) ("Damages for emotional disturbance are not ordinarily allowed."). Accordingly, the court did not err in finding Appellants failed to substantiate their claim for damages arising from the purported breach of contract and in granting summary judgment on that basis.

## 2. Conversion Counterclaim.

¶15 Conversion is the "act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Sears Consumer Fin. Corp. v. Thunderbird Products*, 166 Ariz. 333, 335 (App. 1990). To show conversion, the claimant must prove it had the right to immediate possession of the property at the time of the conversion. *Id.* Money can be converted if it "can be described, identified or segregated and

there is an obligation to treat the funds in a specific manner." *Koss Corp. v. Am. Exp. Co.*, 233 Ariz. 74, 90 ¶ 54 (App. 2013).

**¶16**        Because it turns on the same allegations underlying Appellants' breach of contract counterclaim, it is not clear that the conversion counterclaim could survive under Arizona's economic loss doctrine. Even if it could, under Arizona law, the measure of damages for conversion is the value of the property plus "other damage suffered because of the wrongful detention or deprivation . . . such as damages for loss of use." *Collins v. First Financial Services, Inc.*, 168 Ariz. 484, 486 (App. 1991). Appellants did not show they suffered any compensable damages from the brief interruption in their enjoyment of the right to immediate possession of the funds in the Setoff Account. Appellants contend they "disclosed multiple categories of damages," including "pre-litigation legal fees, consequential damages related to moving the funds from [the] Trust Account to a new bank, punitive damages, and emotional distress damages," but they offered no evidence of any such damages beyond Brehm's testimony recounted above. They did not "set forth specific facts," Ariz. R. Civ. P. 56(e), establishing "a computation and measure" of damages with reasonable certainty, Ariz. R. Civ. P. 26.1(a)(7). Moreover, they admitted the setoff did not cause them to miss any payments and that none of their clients knew about the setoff.

**¶17**        To the extent Appellants claim they were entitled to emotional distress damages on their conversion counterclaim that could not properly be quantified, they have shown no authority for such a claim. Moreover, they have waived any such contention on appeal. Metro, in its answering brief, showed that such damages are not compensable on a conversion claim. *See Farmers Ins. Exchange v. Henderson*, 82 Ariz. 335, 343 (1957) (noting proper recovery for conversion is "the value of the property [taken plus] interest"); *accord* Restatement (Second) of Torts § 927 (1979); Restatement (Second) of Torts § 222A cmt. c (1965). Appellants failed to cite any supporting authority in their reply.[4] For these reasons, the court did not err in granting summary judgment on the conversion counterclaim.

---

[4] The only authority Appellants cite in reply, *Murray v. Farmers Ins. Co.*, 239 Ariz. 58 (App. 2016), was depublished, meaning it cannot be cited here, Ariz. R. Sup. Ct. 111(c)(1)(C). The case also does not discuss or mention a conversion claim.

### B. Denial of Rule 11 Motion.

**¶18** Appellants argue Metro and its counsel violated Rule 11 by taking the position on summary judgment that the setoff never took place, a position they claim is inconsistent with Metro's earlier admissions that the setoff took place but was quickly reversed. By signing a filing, the attorney or party "certifies that to the best of the person's knowledge, information, and belief formed after reasonable inquiry . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Ariz. R. Civ. P. 11(b)(3). In assessing whether to impose sanctions, a court evaluates the conduct under an objective reasonableness standard. *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 410 ¶ 113 (App. 2012). The superior court's ruling on Appellants' motion for Rule 11 sanctions is reviewed for an abuse of discretion. *Id.*

**¶19** In denying the motion for sanctions, the superior court noted Metro promptly and appropriately took steps to clarify when it discovered the inaccuracy. There is no suggestion or finding that Metro or its counsel knowingly made a material misrepresentation. Appellants had the opportunity to, and did, dispute Metro's changed position in their response to Metro's summary judgment motion. On this record, Appellants have not shown the superior court abused its discretion in denying Rule 11 sanctions.

### C. Denial of Leave to Amend Counterclaims.

**¶20** Appellants contend the court erred in denying them leave to amend their counterclaims to allege consumer fraud, fraud and negligent misrepresentation. Leave to amend should be liberally granted, *MacCollum v. Perkinson*, 185 Ariz. 179, 185 (App. 1996); Ariz. R. Civ. P. 15(a)(1), but is properly denied in cases of undue delay, bad faith, dilatory motive, futility, repeated failure to cure deficiencies by previous amendments, or undue prejudice, *Carranza v. Madrigal*, 237 Ariz. 512, 515 ¶ 13 (2015); *Timmons v. Ross Dress For Less, Inc.*, 234 Ariz. 569, 572 ¶ 17 (App. 2014). The denial of a motion to amend a pleading is reviewed for an abuse of discretion. *Timmons*, 234 Ariz. at 572 ¶ 17.

**¶21** The superior court denied Appellants' request because it came too late. Appellants contend they did not seek to allege new facts, only new legal theories, rendering the court's ruling an abuse of discretion. *See, e.g.*, *MacCollum v. Perkinson*, 185 Ariz. 179, 185 (App. 1996) ("Denial of leave to amend is generally an abuse of discretion where the amendment merely

seeks to add a new legal theory."). However, neither *MacCollum* nor any other Arizona case suggests that a party may add new legal theories at any time.

**¶22**        Appellants' reliance on *Spitz v. Bache & Co.*, 122 Ariz. 530 (1979), is equally misplaced. There, the court granted leave to amend in a case that "was still in the discovery stage," noting the opposing party did not argue "the amendment . . . would cause undue delay." *Id*. at 531. Here, the deadlines for discovery and to amend pleadings expired long before Appellants sought leave to amend. Moreover, Appellants offered no compelling reason for their delay, instead acknowledging that "the Fraud and Misrepresentation arguments" they sought to press had "existed in the undercurrent of this case since its inception." On this record, the court did not abuse its discretion in denying leave to amend. *See Contractor & Mining Service & Supply, Inc. v. H & M Tractor & Bearing Corp.*, 4 Ariz. App. 29, 32 (1966) (affirming denial of leave to amend complaint sought "well after the pre-trial order was issued . . . and further discovery precluded").

## II.    Metro's Cross-Appeal.

**¶23**        Metro challenges the $25,000 fee award under the terms of the Loan Documents. Generally, contractual attorney fee provisions are enforced according to their terms, *Harle v. Williams*, 246 Ariz. 330, 333 ¶ 10 (App. 2019), although a provision mandating an unreasonable fee award will not be enforced, *McDowell Mountain Ranch Community Ass'n v. Simons*, 216 Ariz. 266, 270 ¶ 16 (App. 2007).

**¶24**        The Promissory Note provides:

> Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees . . . and appeals.

The Commercial Security and Business Loan Agreements contain the same language with the addition that Borrower/Grantor "agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement." The guaranties contain the same language as the Commercial Security and Business Loan Agreements, but refer to

"Guarantor" and "Guaranty" as opposed to "Borrower" or "Grantor" and "Agreement."

¶25        Metro contends under *McDowell* that the court should have granted its entire fee claim because Appellants did not show it was "clearly excessive." 216 Ariz. at 271 ¶ 20; *see also Bocchino v. Fountain Shadows Homeowners Ass'n*, 244 Ariz. 323, 326 ¶ 15 (App. 2018) ("Even a contractual entitlement to 'all' attorney fees incurred can be overcome by an evidentiary showing that the fees were 'clearly excessive.'"). While Appellants objected to $24,482.70 in fees claimed in Metro's original application, the superior court expressly rejected most of their objections when affording Metro the opportunity to file an amended application. Appellants also objected to Metro's addition of the December 2017 and January 2018 fees, which totaled $30,431.00, and $452.50 in fees relating to a disclosure issue. The record is unclear, however, whether the superior court considered any of the objected-to fees to be clearly excessive.

¶26        Even if the court accepted all of Appellants' objections — including their "overruled" objections to Metro's original application — the result would have reduced the claimed amount by $55,366.20, not the more than $86,000 implicit in the award made. Accordingly, the record does not support the court's decision to reduce the fee award to $25,000. Thus, the fee award is vacated, and the issue remanded for entry of a new fee award consistent with this decision. *See McDowell*, 216 Ariz. at 271 ¶ 21 ("[T]he trial court's discretion is more narrowly circumscribed when the parties contractually agree that the prevailing party shall be awarded all its attorneys' fees.").

## III.    Attorneys' Fees and Costs on Appeal.

¶27        Metro's request for its attorneys' fees and costs incurred in this appeal pursuant to the Loan Documents is granted contingent upon compliance with Arizona Rule of Civil Appellate Procedure 21. Given this ruling, and in the exercise of its discretion, the court denies Metro's request for sanctions under Arizona Rule of Civil Appellate Procedure 25.

## CONCLUSION

¶28 The judgment, with the exception of the award of attorneys' fees, is affirmed; the award of attorneys' fees is vacated and remanded for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA