567 P.2d 347

**WESTERN SURETY COMPANY, a South Dakota Corporation, Appellant,**

v.

**UNION INVESTMENT COMPANY, a corporation, Appellee.**

No. 1 CA–CIV 3298.

Court of Appeals of Arizona, Division 1, Department B.

July 26, 1977.

Jennings, Strouss & Salmon, by T. Patrick Flood, Phoenix, for appellant.

Raftery & Makemson, by Champe Raftery, Phoenix, for appellee.

JACOBSON, Judge.

We are again asked to determine the liability of a bonding company of a mobile home dealer who fails to pay his financer.

This matter comes to us by way of a summary judgment granted to the plaintiff-appellee—Union Investment Company (Union) in its action against defendant-appellant Western Surety Company (Western), for the failure of Western's principal, Frank Archer, dba Archer Mobile Home Sales, to transmit funds from the sale of a mobile home to Union.

The facts are not in dispute. On April 20, 1972, Union appeared as the "purchaser" on an invoice issued by Redman Industries, of Riverside, California, of a 1972 Kirkwood mobile home. The unit was shipped by Redman Industries, Inc. to Haydon Mobile Homes in Yuma, Arizona. This original invoice and the Manufacturer's Certificate of Origin were retained by Union.

The mobile home was subsequently transferred to a mobile home sales lot operated by Tom Archer, dba Archer Mobile Homes in Yuma, and in January, 1973, was transferred again to Frank Archer, dba Archer Mobile Home Sales.

On January 24, 1973, Union and Frank Archer entered into a "Purchase Money Security Agreement" which provided that in consideration of Union advancing monies to Archer, Union would receive a "Purchase Money Security Interest" in the inventory of Archer Mobile Home Sales. The agreement further provided that Archer warranted that he was the "true and lawful owner" of this inventory (including the mobile home involved here). The agreement authorized Archer, as long as he was not in default, to sell that inventory "to customers

in the regular course of Debtor's business" and upon such sale "Debtor shall forthwith pay over to Secured Party an *amount equal to the amount advanced.*" However, if Archer was in default, "Debtor shall hold said accounts and *any amounts collected in trust* for Secured Party and shall forthwith pay the same . . . to Secured Party."[1]

On February 25, 1973, a "Dealer Inventory Statement" was prepared by Union which contained the following statement: "This is to confirm our financing of the following wholesale transaction on your behalf." Listed in this document was the 1972 Kirkwood mobile home which is the subject of this controversy. As part of this inventory statement there was a promissory note in the face amount of $5,235.00 which provided in part, "This note is secured by a security interest in the property described in a security agreement heretofore executed and delivered by the maker." Frank Archer executed this note.

In October, 1973, Archer sold the 1972 Kirkwood mobile home in the regular course of his business for cash. Union was never paid for this unit.

Union subsequently sued Archer and Western for the sum of $5,235.00. Archer took bankruptcy and summary judgment was entered against Western as Archer's surety for the amount claimed. Western has appealed.

It is conceded that the sole liability of Western arises from its position as a surety on Archer's Motor Vehicle Dealer Bond issued in accordance with A.R.S. § 28–1305. This statute provides, in part, that:

"The bond shall inure to the benefit of any person who suffers loss by reason of any unlawful act of the licensee."

The term "unlawful act" has been judicially defined as being "any wrongful act

---

1. There was no contention that Archer was in default at the time of sale of the 1972 Kirkwood mobile home. In this regard, *see, Empire Fire and Mar. Ins. Co. v. First National Bank of Ariz.,* 26 Ariz.App. 157, 546 P.2d 1166 (1976)

where it was held that the fact of default which gave rise to a right of present possession may result in the conversion of the proceeds of the sale of the secured item.

(not involving a breach of contract) for which a civil action will lie." *Commercial Standard Ins. Co. v. West,* 74 Ariz. 359, 249 P.2d 830 (1952).

In the case of *Autoville, Inc. v. Friedman,* 20 Ariz.App. 89, 510 P.2d 400 (1973), we had occasion to consider whether the failure of an automobile dealer to pay the proceeds of the sale of automobiles to the financer of those automobiles constituted a conversion and thus a "wrongful act" so as to subject his motor vehicle dealer surety to liability. We held that where the financing agreement gave the financer no ownership or possessory interest in the automobiles themselves, the failure to comply with an agreement to transmit funds on sale resulted in merely a breach of a creditor-debtor relationship and did not constitute a conversion and thus a wrongful act. We further held that merely retaining of the title to the vehicles by the financer did not give the financer "an ownership or possessory interest in the vehicles themselves, but was compatible only with a securing of his monetary interest in these automobiles." [2]

Union attempts to distinguish our holding in *Autoville,* by contending that its position, insofar as the 1972 Kirkwood mobile home is concerned, was that of owner of the mobile home and Archer was merely a consignee who would sell for a commission (a relationship which we held in *Autoville* would give rise to a conversion). In support of this contention, Union points to the original invoice from Redman Industries, Inc. which lists Union as the "sold to" party. However, this invoice was prepared when Union was dealing with Haydon Mobile Homes. We do not know, nor do we need to determine, what the relationship was between Union and Haydon Homes. Western's liability is determined by the relationship between Union and Archer.

As to Archer, it is clear that Union was in a position of a financing agent for Archer's dealership. The "Purchase Money Security Agreement" entered into between Archer and Union is completely inconsistent with a claim of ownership by Union in Archer's inventory. In fact, that agreement requires Archer to warrant that he is the "true and lawful owner" of the inventory. Moreover, the agreement gives Union a "Purchase Money Security Interest" in that inventory; an interest which would not be required if, in fact, Union was the owner.

Also on this particular mobile home, Union acknowledged that it was "financing . . . the wholesale transaction." In addition, it required Archer to execute a promissory note where again it was stated that the note is "secured by a security interest in the property described." This documentary evidence is completely inconsistent with an owner-consignee relationship and is entirely consistent with a creditor-debtor relationship.

We therefore hold that based upon the evidence presented, which was uncontradicted, the relationship of creditor-debtor existed between Union and Archer as a matter of law. We further hold that the breach by Archer of his contractual obligation arising out of that creditor-debtor relationship does not amount to a conversion which would subject Western under its bond of liability for Archer's "wrongful acts". *Autoville, Inc., supra.*

For the foregoing reasons, the judgment of the trial court is reversed and the matter remanded with directions to enter judgment in favor of Western Surety Company.

WREN, Acting P. J., and EUBANK, J., concurring.

---

2. For a contra holding, *see* Court of Appeals, State of Arizona, Division 2 opinion in *United Bonding Ins. Co. v. Swartz,* 12 Ariz.App. 197, 469 P.2d 89 (1970).