91 P.3d 362

**CASE CORPORATION, a Delaware corporation; Case Credit Corporation, a Delaware corporation, Plaintiffs–Appellants,**

v.

**Duane GEHRKE and Denise Gehrke, husband and wife, Defendants–Appellees.**

**No. 1 CA–CV 03–0360.**

Court of Appeals of Arizona, Division 1, Department A.

June 8, 2004.

Quarles & Brady Streich Lang LLP, By Robert F. Miles, Scott A. Klundt, Rachel M. Bacalzo, Phoenix, Attorneys for Plaintiffs–Appellants.

Jaburg & Wilk, P.C., By Kathi Mann Sandweiss, Roger L. Cohen, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

SNOW, Judge.

¶ 1 Plaintiffs-appellants Case Corporation and Case Credit Corporation appeal the trial court's entry of partial summary judgment in favor of defendant-appellees Duane and Denise Gehrke on Case's claim that the Gehrkes converted proceeds owed to Case pursuant to a business relationship. For the following reasons, we reverse the trial court's judgment and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Duane Gehrke is the President and Denise Gehrke is the Secretary of Utility Equipment Company ("UEC"), an Arizona corporation in the retail business of selling trenching equipment, backhoes, and other heavy construction equipment. UEC was a dealer of Case products. On May 30, 1990, Duane Gehrke, on behalf of UEC, signed a "Wholesale Financing and Security Agreement" with Case. Pursuant to the agreement Case financed equipment and products purchased from Case by UEC for resale to retail customers.

¶ 3 Under the agreement, Case held a security interest in:

(a) All [UEC's] now owned and hereafter acquired inventory, equipment, and other movable property, ... obtained from or financed by [Case] ... (collectively referred to as the "Inventory");

(b) All proceeds of Inventory, including but not limited to, cash, deposits, accounts receivable, trade-ins, chattel paper and instruments arising from the

sale, lease or demonstration of Inventory (the "Proceeds of Inventory").

The agreement also provided that proceeds of inventory be remitted to Case in accordance with the terms outlined in related agreements. A related agreement, the Schedule of Discounts and Terms, required that payment be remitted to Case "within seven calendar days from the date a Unit is Sold at Retail."

¶ 4 Paragraph six of the agreement also provided that Case could require that proceeds of inventory be segregated from UEC's other funds.

[UEC] shall, upon receipt of written demand by [Case] and as [Case] may direct, hold all Proceeds of Inventory in express trust for [Case] and deliver to [Case] all Proceeds of Inventory which are in [UEC's] possession and/or deposit all such Proceeds of Inventory in a separate account and not commingle such Proceeds of Inventory with any other funds of [UEC]. If any Proceeds of Inventory are evidenced by notes, leases, rental agreements or checks ("documents"), [UEC] hereby assigns and, upon demand, shall deliver and/or endorse such documents to [Case].

Case did not request that UEC maintain the proceeds of inventory in express trust or in an account separate from UEC's other funds.

¶ 5 On December 15, 2000, Case sent a letter to UEC notifying UEC that it was in substantial default and that Case was terminating all of their agreements. The letter specified that UEC had failed to remit full payment for ten pieces of equipment. In response, UEC filed a petition for relief under Chapter 11 in bankruptcy on December 22, 2000. In June 2002, Case filed a two count lawsuit against the Gehrkes. In the first count, Case sought to recover against Duane Gehrke on his guarantee of UEC's obligations under its agreement with Case.[1] In the second count, Case alleged that Duane and Denise Gehrke had converted proceeds from UEC's sale of Case equipment having a value of $638,366.36 by not transferring the proceeds from the sale of the equipment to Case when Case had a security interest in both the equipment and the proceeds of sale.

¶ 6 The Gehrkes moved for partial summary judgment on the conversion claim. Citing *Autoville, Inc. v. Friedman*, 20 Ariz. App. 89, 510 P.2d 400 (1973) as controlling, the Gehrkes argued that non-specified and unsegregated funds could not be the subject of a conversion claim. The Gehrkes asserted and Case did not dispute that, throughout its relationship with Case, UEC maintained a general operating account into which it deposited the proceeds of sale of both Case and non-Case inventory, and no effort was made to segregate the proceeds of Case's secured goods. Consequently, the Gehrkes argued, the proceeds resulting from the sale of Case products lost their character as identifiable funds and could not be the subject of the tort of conversion.

¶ 7 Case responded that the Gehrkes' argument was "simply wrong." Case contended that because it held a security interest in the inventory and proceeds from the sale of the inventory, it had an ownership interest in the proceeds and could therefore maintain an action for conversion. Case admitted, for purposes of the motion, that it had never demanded pursuant to the agreement that UEC hold the proceeds of Case inventory in trust, deposit the proceeds into a separate account, or not commingle Case proceeds with UEC's other funds.

¶ 8 After oral argument, the trial court granted the Gehrkes' motion for partial summary judgment on the conversion claim. The court found that *Autoville* controlled. The court reasoned:

The title to the inventory was in Utility Equipment Company ("UEC"), and all proceeds were deposited to the general corporate account of UEC before any demand was made by Plaintiffs to segregate the funds. ". . . conversion does not lie to enforce the mere obligation to pay a debt which may be discharged by the payment of money generally," 20 Ariz.App. 89, 92, 510 P.2d 400.

1. Because Denise Gehrke had not signed the guarantee agreement, it was presumably not enforceable against community assets. *See* Ariz. Rev.Stat. ("A.R.S.") § 25–214(C) (2000).

The court denied a motion for reconsideration and entered partial summary judgment on the conversion claim in favor of the Gehrkes. The court included language pursuant to Arizona Rule of Civil Procedure 54(b) and stayed the remaining proceedings in the superior court pending appeal. Case filed a timely appeal and we have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

■ ¶ 9 On appeal, Case argues that the trial court erred by entering partial summary judgment in UEC's favor because Case had a security interest in the proceeds of sale of its equipment, and that the Gehrkes' use of those proceeds gave rise to a viable claim for conversion against them. The Gehrkes admit that Case had a security interest in the proceeds of sale, but argue that a security interest alone in the proceeds of sale is insufficient to give rise to a cause of action for conversion. According to the Gehrkes, before a conversion action could be brought, the proceeds of sale would have to be placed in a separate, segregated account or otherwise subject to an express trust. The Gehrkes cite two cases from this court, *Autoville* and *Universal Marketing and Entertainment, Inc. v. Bank One of Arizona*, 203 Ariz. 266, 53 P.3d 191 (App.2002), to support their argument. We disagree with the Gehrkes that the cases support the trial court's entry of summary judgment against Case on the conversion claim.

¶ 10 Summary judgment may be granted when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c). In reviewing a trial court's decision on a motion for summary judgment, we determine *de novo* whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000). We view the facts and the inferences drawn therefrom in the light most favorable to the party against whom judgment was entered. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996).

### A. Conversion

■ ¶ 11 Conversion is defined as "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 166 Ariz. 333, 335, 802 P.2d 1032, 1034 (App. 1990); *see also Universal Marketing*, 203 Ariz. at 268, ¶ 6, 53 P.3d at 193 (citing Restatement (Second) of Torts § 222(A)(1) (1965)). To maintain an action for conversion, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion. *Sears Consumer Fin. Corp.*, 166 Ariz. at 335, 802 P.2d at 1034; *Empire Fire & Marine Ins. Co. v. First Nat'l Bank of Ariz.*, 26 Ariz.App. 157, 159, 546 P.2d 1166, 1168 (App. 1976). A secured party has the right to take possession of the collateral upon default, and so has sufficient possessory interest to bring a conversion action in those circumstances. *Id.* While a conversion claim cannot be maintained to collect on a debt that could be satisfied by money generally, *Autoville*, 20 Ariz.App. at 92, 510 P.2d at 403, money can be the subject of a conversion claim if the money "can be described, identified or segregated, and an obligation to treat it in a specific manner is established." *Id.* at 91, 510 P.2d at 402.

### 1. Applicability of *Autoville*

¶ 12 The trial court in this case relied on *Autoville* when finding no viable claim for conversion. In *Autoville*, Friedman entered an oral agreement with Caplan and Siegel, the stockholders of a used car dealership called Autoville, Inc. 20 Ariz.App. at 90, 510 P.2d at 401. Under the agreement, Friedman would obtain vehicles at wholesale prices and provide them to Autoville for resale. *Id.* Upon sale of each vehicle, Friedman was to receive the wholesale cost he had expended and a service fee. *Id.* Under this arrangement, Autoville completed fifty-nine transactions, but remitted to Friedman his share of only thirty-one sales. *Id.* at 91, 510 P.2d at 402. Caplan and Siegel liquidated all their vehicles, deposited the funds in Autoville's corporate account, and withdrew the funds for themselves. *Id.* Friedman brought

an action for conversion of the proceeds owed to him from the sale of the vehicles. *Id.* at 90, 510 P.2d at 401.

¶ 13 The trial court granted judgment in favor of Friedman. *Id.* We reversed, finding both that Friedman had no possessory interest in the vehicles and so had none in the proceeds, and that the specific sale proceeds at issue had not been set aside in a special account for Friedman or otherwise segregated and so could not be the subject of conversion. *Id.* at 92, 510 P.2d at 403. We noted that no evidence existed that the debt could not be discharged from a source other than the sale proceeds. *Id.; see also W. Sur. Co. v. Union Inv. Co.,* 116 Ariz. 31, 33, 567 P.2d 347, 349 (App.1977) (relying on *Autoville* to state that where one party acts as a financing agent for another party, relationship is that of creditor and debtor and conversion action will not lie).

¶ 14 Based on the facts of this case, *Autoville* is not controlling. As Case points out, Friedman did not have any security interest in the vehicles or any proceeds from the sale of the vehicles, making the relationship merely creditor-debtor.

¶ 15 This case is more like *Empire Fire and Marine* than *Autoville.* In *Empire Fire and Marine,* First National Bank of Arizona brought an action against the insurer of McDonald Mountain Motors, a Flagstaff car dealership, alleging conversion. 26 Ariz.App. at 158–59, 546 P.2d at 1167–68. The action arose after a couple purchased a vehicle from the dealership using financing from First National Bank.[2] *Id.* at 158, 546 P.2d at 1167. Only a month later, the same couple traded in that vehicle as part of the purchase of a different vehicle. *Id.* As part of the transaction, McDonald Mountain Motors agreed to pay First National Bank the amount due on the original vehicle. *Id.* The dealership did not pay the bank either the first payment or the balance due, and promptly sold the vehicle to someone else, keeping the proceeds of the sale. *Id.* at 159, 546 P.2d at 1168. The

trial court granted summary judgment in the bank's favor, and the insurer appealed. *Id.*

¶ 16 On appeal, the insurer argued that the case was analogous to *Autoville,* and that it was not liable for the amount owed to the bank because the dealership had not committed an "unlawful act," such as conversion. *Id.* at 159, 546 P.2d at 1168. We disagreed, finding *Autoville* distinguishable because "[i]n that case the plaintiff had no ownership or security interest in the property nor did he have any right to the possession of the property. The only relationship between the parties was that of debtor and creditor based upon a contract." *Id.*

¶ 17 The same reasons exist for distinguishing *Autoville* from the case at hand. Here, Case had a security interest in both the equipment and in the proceeds from any sale of the equipment. The agreement between the parties required that the proceeds from any sale be deposited into UEC's account and electronically transferred to Case within seven days. On the eighth day after the sale, if the funds were not deposited and transferred, UEC had defaulted on the agreement and Case had the right to immediate possession of the equipment or the proceeds.[3] This agreement created an entirely different right to the proceeds of sale than existed in *Autoville,* where the contract in question created no security interest in the vehicles or the proceeds from their sale. Because the Gehrkes were required to pay Case a specifically secured amount from a definite source, *Autoville* cannot control the disposition of this case.

### 2. Applicability of *Universal Marketing*

¶ 18 Case does not disagree with the rule stated in *Autoville* and relied on by the trial court that, to be the subject of conversion, money must be described, identified or segregated, and an obligation must exist to treat the money in a specific manner. 20 Ariz. App. at 91, 510 P.2d at 402. A conversion claim cannot be maintained, however, to col-

---

2. First National Bank appropriately protected its security interest by having its name noted on the vehicle's title. *Id.* at 158, 546 P.2d at 1167.

3. *See Sears Consumer Fin. Corp.,* 166 Ariz. at 335, 802 P.2d at 1034 (citing U.C.C. for the proposition that "a secured party has sufficient possessory interest to bring a conversion action when the party's debtor defaults").

lect on a debt that could be paid by money generally. *Id.* at 92, 510 P.2d at 403. Case argues that the money in question was identifiable as the secured proceeds from sales and that, because Case had a security interest in these proceeds and was entitled to possession of the proceeds within seven days of the sale of a piece of equipment, UEC was obligated to treat the funds in a particular manner, that is, to remit them to Case. Case argues that this satisfies the requirements for money to be the subject of a conversion. The Gehrkes respond that because Case never demanded that the proceeds be deposited into a separate account or be held in trust so as not to commingle it with any other funds, there can be no claim for conversion.

¶ 19 The Gehrkes rely on our decision in *Universal Marketing*, 203 Ariz. 266, 53 P.3d 191, for their contention that Case's failure to request segregation destroys its claim for conversion. In that case, Universal planned to acquire a company called Superbull, Inc. with the help of their agent, Roy Wensel. *Id.* at 268, ¶ 3, 53 P.3d at 193. As part of the transaction, Universal transferred $50,000 to Wensel's bank account for Wensel to release the funds to Superbull following Superbull's execution of a loan agreement and signed note. *Id.*

¶ 20 Before Wensel could finalize these arrangements, his bank account, including the funds transferred by Universal, was garnished by Bank One, a judgment creditor. *Id.* at 268, ¶ 4, 53 P.3d at 193. Although both Wensel and Universal informed Bank One that the bulk of the funds in the account belonged to Universal, not Wensel, Bank One proceeded with the garnishment and refused to return the funds. *Id.* Universal filed suit against Bank One, claiming that Bank One unlawfully converted Universal's funds. *Id.* at 267, ¶ 2, 53 P.3d at 192. The trial court dismissed Universal's claim for failure to state a claim upon which relief could be granted, and Universal appealed. *Id.*

¶ 21 On appeal, we affirmed the trial court's dismissal, stating that a conversion action could not be brought against Bank One for the garnishment of unsegregated funds Universal deposited into Wensel's account. This was true because:

At the time of the alleged conversion . . . the party with the 'immediate right to possession of the chattel' was not Universal, but [Wensel's bank] . . . because the chattel in question consisted exclusively of unsegregated money that Universal had deposited into Wensel's general bank account. In making this deposit, Universal made the funds the property of [Wensel's bank], giving rise to a debt that [Wensel's bank] owed to Wensel.

*Id.* at 268, ¶ 7, 53 P.3d at 193. In making this finding, we relied on several out-of-state cases that held that an action for conversion of money deposited into a bank account could only be brought where the money is deposited "for a special purpose with notice to the bank," *Id.* at 269, ¶ 12, 53 P.3d at 194 (quoting *Bernardini v. Cent. Nat'l Bank of Richmond,* 223 Va. 519, 290 S.E.2d 863, 864 (1982)), or where it is "deposited under any 'special deposit agreement having the characteristics of a bailment.' " *Id.* (quoting *Houston Nat'l Bank v. Biber,* 613 S.W.2d 771, 775 (Tex.Civ.App.1981)). Because neither of these prerequisites existed, we held that the account was "unprotected," and thus "the entire account debt became fair game for any creditor of Wensel." *Id.* at 270–71, ¶ 18, 53 P.3d at 196–97.

¶ 22 *Universal Marketing* can be distinguished from the case at hand for the same reasons *Autoville* is distinguishable: unlike Case under the present facts, Universal did not take the appropriate steps to maintain a possessory interest in the funds it transferred to Wensel. Absent such a present possessory right, there could be no cause of action for conversion. In a case like *Autoville* or *Universal Marketing,* it is entirely correct to assert that without some further means of identifying the proceeds at issue, such as segregation, no conversion action would lie. The same is not true here, where the security interest itself provides the additional method of identifying the specific proceeds at issue.

¶ 23 We cannot accept the Gehrkes' argument that a security interest in proceeds is destroyed when the debtor commingles the proceeds with other funds. Such a decision would give the debtor the ability to unilater-

ally cancel a creditor's security interest in the proceeds of sale and would controvert Arizona law. A.R. S. § 47–9315(B)(2) [2003]. ("Proceeds [that are not goods] that are commingled with other property are identifiable proceeds . . . to the extent that the secured party identifies the proceeds by a method of tracing, including application of equitable principles, that is permitted under law . . . with respect to commingled property of the type involved.")[4] *See also* A.R.S. § 47–9205 (2003) (presentation of security interest in commingled proceeds not fraudulent to other creditors); *Pavilion Hotel, Inc. v. Valley Nat'l Bank,* 180 Ariz. 498, 500–03, 885 P.2d 186, 188–91 (App.1994) (secured proceeds are traceable).

¶ 24 Because Case has a security interest in the proceeds, and because that security interest allows the proceeds to be identified even when they are commingled with other funds, this case is distinguishable from both *Autoville* and *Universal Marketing.* Case, therefore, can assert a viable claim for con-

version of its secured proceeds of the inventory. Accordingly, the trial court erred by entering partial summary judgment on this claim.

## CONCLUSION

¶ 25 Because the trial court erred by entering partial summary judgment against Case, we reverse the judgment and remand for further proceedings consistent with this decision.

CONCURRING: JAMES B. SULT, Presiding Judge and MAURICE PORTLEY, Judge.

---

**4.** According to the comment to A.R.S. § 47–9315(B)(2) the "lowest intermediate balance rule" is one of the equitable practices that may be used to identify a creditor's right to proceeds. A.R. S. § 47–9315.