Therefore, to the extent that any factual or legal allegations in the Plaintiffs' Opposition *654 contradict or diverge from those in the Amended Complaint, the court will consider only the version of the allegations that appears in the Amended Complaint. See Marks v. Dann, 600 F. App'x 81, 89 (4th Cir. 2015) ("The district court properly deemed these matters outside the complaint and refused to consider them as part of its Rule 12(b)(6) analysis."); Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by briefs in opposition to a motion to dismiss.... To hold otherwise would mean that a party could unilaterally amend a complaint at will." (citations omitted) ).
III. COUNT FIVE: FALSE DESIGNATION AND MISREPRESENTATION OF ORIGIN
Count Five of the Amended Complaint alleges that the Defendants' conduct constituted false designation and misrepresentation of origin, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Am. Compl. ¶¶ 91-97.[3] Section 43(a) of the Lanham Act states, in relevant part:
(1) Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person
* * *
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(a) (1) (A).[4]
To state a false designation claim, the Plaintiffs must plead that the Defendants used a designation in interstate commerce in connection with goods and services; that the designation was "likely to cause confusion, mistake or deception as to origin, sponsorship, or approval of defendant's goods or services"; and that the Plaintiffs were, or are likely to be, damaged by these acts. Am. Online, Inc. v. LCGM, Inc., 46 F.Supp.2d 444, 449 (E.D. Va. 1998).
The Plaintiffs allege that Mr. Williams, "as manager of the franchise locations," promotes his "businesses using promotions that are almost identical to such promotions employed by Liberty, and for the purpose of promoting tax preparation businesses." Am. Compl. ¶ 93. These promotions are described as "dressing employees similarly to the Statue of Liberty and waiving to passers-by in an attempt to *655 draw customers to the store, as well as offering customers $50.00 for tax preparation referrals." Id. ¶ 59. The Plaintiffs allege that these promotions, combined with the continued use of the franchise locations as Mr. Williams's tax preparation centers, "give customers the impression such stores are Liberty Tax stores," and, further, were undertaken by Defendants "to cause confusion, or to cause mistake, or to deceive." Id. ¶¶ 94, 96. From this conduct, the Plaintiffs allege "damages to the value of the Marks and to customer goodwill," monetary damages, and irreparable injury. Id. ¶¶ 95, 97.
Courts have found that facts alleging a defendant's use of marks that "deceive or confuse customers into thinking" a plaintiff certified a defendant's actions, "or otherwise sponsored or approved her services," were sufficient at the motion to dismiss stage. Int'l Found. Emp. Benefit Plans, Inc. v. Cottrell, No. WDQ-14-1269, 2015 WL 127839, at *4 (D. Md. Jan. 7, 2015). Further, allegations that the defendant acted like a representative of the plaintiff and promoted "services ... in a manner likely to cause confusion as to whether such services were offered in connection with, or on behalf of" the plaintiff were sufficient to survive a motion to dismiss. AvePoint, Inc. v. Power Tools, Inc., 981 F.Supp.2d 496, 517 (W.D. Va. 2013). Asserting that a defendant used a mark "through distribution, advertising, offering for sale and sale of its products and services, and in other communications," was likewise sufficient to state a claim of false designation. Superior Performers, Inc. v. Family First Life, LLC, No. 1:14cv83, 2014 WL 7338923, at *4 (M.D.N.C. Dec. 22, 2014). Accordingly, based on the alleged facts contained in the Amended Complaint, the court hereby FINDS that the Plaintiff's allegations, presumed true, are sufficient to survive Mr. Williams's Partial Motion to Dismiss as to Count Five, False Designation and Misrepresentation of Origin, according to 15 U.S.C. § 1125(a)(1)(A).
IV. COUNT SEVEN: MISAPPROPRIATION OF TRADE SECRETS
Count Seven of the Amended Complaint alleges that the Defendants' conduct constituted misappropriation of trade secrets, Am. Compl. ¶¶ 105-09, which requires a plaintiff to prove (1) the existence of a trade secret, and (2) its misappropriation by a defendant. See, e.g., Milton v. IIT Research Inst., 138 F.3d 519, 521 (4th Cir. 1998). First, to constitute a trade secret, the business information at issue must have "independent economic value, actual or potential, from [ (a) ] not being generally known to, and [ (b) ] not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Va. Code Ann. § 59.1-336.[5] Courts have found that "customer lists, pricing information, marketing and sales techniques, information about products, etc." may constitute trade secrets, "under the right set of circumstances." MicroStrategy, Inc. v. Bus. Objects, S.A., 331 F.Supp.2d 396, 416 (E.D. Va. 2004). Second, the business information *656 must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Va. Code Ann. § 59.1-336. However, "[t]he secrecy need not be absolute." Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 299 F.Supp.2d 565, 574 (E.D. Va. 2004) (stating "the owner of a trade secret may, without losing protection, disclose it," if such disclosure is made in confidence).
In support of their claim, the Plaintiffs allege that they own "numerous trade secrets, including but not limited to, confidential manuals, marketing strategies, and marketing programs." Am. Compl. ¶ 106. They additionally argue that they have "taken extensive measures to preserve these trade secrets for the purpose of maintaining competitive advantage in the marketplace," by "explicitly provid[ing] for the protection" of this business information in the franchise agreements. Id. ¶ 107. Pursuant to the UTSA, "[r]estricting access to information, implementing confidentiality agreements, and providing physical barriers to access are all reasonable efforts." Bus. Objects, 331 F.Supp.2d at 416. Thus, based on the facts provided in the Amended Complaint, the Plaintiffs have alleged sufficient facts to plead that they have taken reasonable efforts to maintain the secrecy of the "confidential manuals, marketing strategies, and marketing programs." Am. Compl. ¶ 106.
However, the Plaintiffs allege no facts to show that the elements of the non-exhaustive list of "trade secrets" provided in the Amended Complaint have "independent economic value, actual or potential, from not being generally known" and "not being readily ascertainable by proper means." Va. Code. Ann. § 59.1-336 ; see also McKay Consulting, Inc. v. Rockingham Mem'l Hosp., 665 F.Supp.2d 626, 634-35 (W.D. Va. 2009) (dismissing misappropriation of trade secrets claim because complaint failed to show information was not "readily ascertainable by proper means").[6] Accordingly, based on the alleged facts contained in the Amended Complaint, presumed true, the court FINDS that the Plaintiffs have not plausibly established that the non-exclusive list at issue constitutes a trade secret, and thus, cannot survive Mr. Williams's Partial Motion to Dismiss as to Count Seven.[7]
V. COUNT EIGHT: TORTIOUS INTERFERENCE
Count Eight of the Amended Complaint alleges that Mr. Williams engaged in tortious interference with an existing contract. Am. Compl. ¶¶ 110-15. The parties dispute whether Virginia or Arizona law should apply to this Count. A federal court sitting in diversity must follow state substantive law, including choice of law rules, of the state in which it sits. See Klaxon, 313 U.S. at 494-98, 61 S.Ct. 1020. Accordingly, under Virginia law, the principle of lex loci delicti-the law of the place of the wrong-applies to the Plaintiffs'
*657 tort claims. See Insteel Indus., Inc. v. Costanza Contracting Co., 276 F.Supp.2d 479, 486 (E.D. Va. 2003) (citing Jones v. R.S. Jones & Assoc., Inc., 246 Va. 3, 431 S.E.2d 33 (1993) ).
The place of the harm is "defined as the place where the last event necessary to make an actor liable for an alleged tort takes place." Id. (citing Quillen v. Int'l Playtex, Inc., 789 F.2d 1041, 1044 (4th Cir. 1986) ). This inquiry looks at where the allegedly tortious conduct took place, not where the effects of that conduct may be felt. See Milton, 138 F.3d at 522 ("Virginia courts routinely apply the law of other states, even though the physical pain or economic impact caused by the tort injury may be experienced by the Virginia plaintiffs within the boundaries of the Commonwealth.").
In this case, the allegedly tortious conduct consists of Mr. Williams intentionally interfering with the franchise agreements, "with the aim of ending" such agreements between the Plaintiffs and Ms. Williams; and intentionally inducing Ms. Williams not to perform her obligations under the franchise agreements. Am. Compl. ¶¶ 112-13. The franchises are located in Arizona, and the Plaintiffs state that Mr. Williams "acted in Arizona." See Am. Compl. ¶ 19; Pl. Opp'n at 6. However, the Plaintiffs insist that "the harm was created in Virginia," and so, Virginia law should apply. Pl. Opp'n at 6. This is a misstatement of well-settled Virginia law. See, e.g., Gen. Assurance of Am., Inc. v. Overby-Seawell Co., 893 F.Supp.2d 761, 777 (E.D. Va. 2012) ("Virginia law selects the place of where the wrongful act occurred and not ... the place where the injury was suffered."). Accordingly, the court FINDS that Arizona tort law properly applies to Count Eight.
To prove tortious interference with a contract under Arizona law, the Plaintiffs must show:
(1) [E]xistence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly.
Safeway Ins. Co. v. Guerrero, 210 Ariz. 5, 106 P.3d 1020, 1025 (2005) (en banc) (citation omitted).
The Amended Complaint alleges that the Plaintiffs and Ms. Williams were in a contractual relationship, of which Mr. Williams was aware. Am. Compl. ¶¶ 110-11. Mr. Williams is alleged to have, without justification, "intentionally interfered with the [f]ranchise [a]greements with the aim of ending" those agreements, and to have "intentionally induced Tiffany Williams not to perform her obligations" under the franchise agreements. Id. ¶¶ 112-14. This conduct allegedly caused the Plaintiffs "significant economic damages and losses." Id. ¶ 115.
The Plaintiffs' Opposition also refers to several other paragraphs of the Amended Complaint in support of their tortious interference claim, which state that Mr. Williams was "the sole decision-maker" of the franchises, id. ¶ 18; was "the spokesperson for the group" on conference calls with the Plaintiffs, id. ¶ 23; and was the leaseholder for the main franchise location, id. ¶ 24. See Pl. Opp'n at 15-16. These references also list Ms. Williams's alleged breaches of the franchise agreements. Am. Compl. ¶ 50.
From these facts, the Plaintiffs have sufficiently alleged the existence of a contractual relationship, and Mr. Williams's knowledge of that relationship. However, the Plaintiffs allege no facts regarding the third element of tortious interference with an existing contract: any intentional interference by Mr. Williams *658 which induced or caused a breach of the franchise agreements. The statements that Mr. Williams "intentionally interfered with the [f]ranchise [a]greements with the aim of ending" them, and "intentionally induced Tiffany Williams not to perform her obligations" are conclusory legal statements, and a mere recitation of the elements of a tortious interference claim. See Dube v. Likins, 216 Ariz. 406, 167 P.3d 93, 100 (Ariz. Ct. App. 2007) (dismissing claim of knowing interference with business expectancy when there were only Conclusory assertions, not factual allegations, of interference). Such "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955.
References to allegations in the Amended Complaint that Mr. Williams was the "sole decision-maker" for the franchises and the "spokesman for the group" on conference calls, as well as a list of Ms. Williams's alleged breaches of the franchise agreements, do not allege any intentional interference on the part of Mr. Williams. Nor do these facts allege any improper action on the part of Mr. Williams, as is also required under Arizona law. See Safeway Ins. Co., 106 P.3d at 1025. Accordingly, the court FINDS that the Plaintiffs have not alleged sufficient facts to establish a prima facie case of tortious interference with an existing contract.
VI. COUNT NINE: UNJUST ENRICHMENT
Count Nine of the Amended Complaint alleges unjust enrichment against Mr. Williams. Am. Compl. ¶¶ 116-21. As above, see supra Part V, the parties dispute whether Virginia or Arizona law should apply to this Count. For the same reasons, i.e., because the "place of the wrong," where Mr. Williams allegedly engaged in tortious conduct, is Arizona, the court FINDS that Arizona law applies to Count Nine. See Insteel, 276 F.Supp.2d at 486 (citing Jones, 246 Va. at 3, 431 S.E.2d 33) ; supra Part V.
To plead unjust enrichment under Arizona law, the Plaintiffs must allege "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." Perez v. First Am. Title Ins. Co., 810 F.Supp.2d 986, 991 (D. Ariz. 2011) (quoting Freeman v. Sorchych, 226 Ariz. 242, 245 P.3d 927, 936 (Ariz. Ct. App. 2011) ).
In support of their claim, the Plaintiffs allege in the Amended Complaint, first, that Mr. Williams continued to operate the franchises after termination of the franchise agreements. Am. Compl. ¶ 117. Second, Mr. Williams is alleged to have "improperly and illegally acquired income as a result of such operation," and that income "was justly due and owing to Liberty." Id. ¶ 118. Third, Mr. Williams allegedly "had knowledge and accepted the benefits of monies paid by customers by improperly using" Plaintiffs' Marks, and by "improperly operating the tax preparation businesses after termination" of the franchise agreements. Id. ¶ 119. Lastly, Plaintiffs allege that Mr. Williams's "acceptance and retention of the monies paid by customers" after termination is unjust and inequitable, and that Plaintiffs are "entitled to an award of all amounts retained by [Mr. Williams] related to his operation of the tax preparation businesses in question following the termination" of the franchise agreements. Id. ¶¶ 120-21.
Claims of unjust enrichment have survived motions to dismiss when, for example, plaintiffs confer a benefit, at their own expense, in medical and dental insurance savings, and could have received commissions on that insurance. See *659 Arnold & Assocs., Inc. v. Misys Healthcare Sys., PLC, 275 F.Supp.2d 1013, 1025 (D. Ariz. 2003). In contrast, plaintiffs have failed to state a claim of unjust enrichment when they only allege wrongful conduct by the defendant which led to a benefit, but not that plaintiffs "conferred a single benefit on [d]efendants." Joshua David Mellberg LLC v. Will, 96 F.Supp.3d 953, 988 (D. Ariz. 2015).
In this case, the Plaintiffs allege that Mr. Williams benefitted by continuing to operate the franchise locations; that the income earned from that operation "was justly due and owing to Liberty"; and that Mr. Williams's "acceptance and retention" of that income was "unjust and inequitable." Am. Compl. ¶¶ 117-18, 120. Based on these alleged facts contained in the Amended Complaint, presumed true, the court FINDS that the Plaintiffs' allegations are sufficient to state a claim as to Count Nine, Unjust Enrichment.
VII. COUNTS TEN AND ELEVEN: INJUNCTIVE RELIEF
Count Ten requests a preliminary injunction, and Count Eleven requests a permanent injunction after a final judgment on the merits. Am. Compl. ¶¶ 122-36. For a preliminary injunction to issue, the Plaintiffs must show (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of an injunction; (3) that the balance of equities or hardships tips in the Plaintiffs' favor; and (4) that the injunction is in the public interest. See Winter v. Nat. Res. Defense Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). For a permanent injunction to issue after a final judgment, the Plaintiffs must further show "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).
In their claims for injunctive relief, the Plaintiffs first allege that both of the Defendants acknowledged and agreed, in the franchise agreements, that the Plaintiffs are entitled to injunctive relief for any breach of post-termination obligations. Am. Compl. ¶ 124. The Plaintiffs further allege that both of the Defendants' refusal to return confidential information, failure to assign the franchise leases, failure to transfer franchise assets, and use of the Plaintiffs' Marks constitute irreparable harm, because such conduct is "a clear violation of the law and the express terms" of the franchise agreements. Id. ¶ 125. The Plaintiffs also state that this continuing breach of the terms of the franchise agreements means that the Plaintiffs have no adequate remedy at law and are likely to succeed on the merits. Id. ¶¶ 127, 129. The Plaintiffs also state that their injury outweighs any that would be sustained by the Defendants, and that injunctive relief would not adversely affect the public interest. Id. ¶¶ 131-32.
Almost all of Plaintiffs' claims to injunctive relief involve both of the Defendants' breach of the franchise agreements. However, the Plaintiffs concede that Mr. Williams is not a party to the franchise agreements. See id. ¶ 18. Additionally, neither Mr. Williams's name nor signature appear in any of the agreements provided to the court. See Exs., ECF Nos. 1-1, 1-2, 1-3, 1-4, 1-5.
While the Plaintiffs allege that Mr. Williams was the manager of the franchises and the sole decision-making authority, they provide no factual or legal allegations in the Amended Complaint that this role makes him subject to the terms of the franchise agreements. Nor do the Plaintiffs allege any other basis through which Mr. Williams is bound by the terms of the franchise agreements. Therefore, the Plaintiffs' request for injunctive relief *660 from Mr. Williams's continuing breach of the franchise agreements is implausible on its face, because there are no factual allegations that Mr. Williams carries any obligations under the franchise agreements. See JTH Tax, Inc. v. Clark, No. 2:11cv59, 2011 WL 13234318, at *2 (E.D. Va. May 6, 2011) (finding no showing of likelihood of success on the merits because defendant was non-signatory to agreements, and nothing in agreements limited his conduct); Meena Enters., Inc. v. Mail Boxes Etc., No. DKC 12-1360, 2012 WL 4863695, at *3 (D. Md. Oct. 11, 2012) (finding non-signatory to franchise agreement bound because he was assignee of the agreement); JTH Tax, Inc. v. Frashier, No. 2:09cv40, 2009 WL 10689306, at *2 (E.D. Va. Apr. 15, 2009) (finding non-signatory to franchise agreement bound because he signed as guarantor). Accordingly, the court FINDS that the Plaintiffs have not plausibly shown a likelihood of success on the merits, insofar as they seek injunctive relief from Mr. Williams violating the franchise agreements.
However, the Plaintiffs also allege that Mr. Williams is wrongfully using the Plaintiff's Marks. Am. Compl. ¶ 125. Presumed true, trademark infringement typically constitutes irreparable injury. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 939 (4th Cir. 1995) ("[W]e recognize that irreparable injury regularly follows from trademark infringement." (citation omitted) ). Accordingly, at this stage in the litigation when all factual allegations are presumed true, a likelihood of success on the merits is plausible. Further, the Plaintiffs allege that the balance of hardships favors them and the public interest would not be harmed by injunctive relief. Am. Compl. ¶¶ 131-32. As such, the court FINDS that the facts alleged by the Plaintiffs, presumed true, are sufficient to survive Mr. Williams's Partial Motion to Dismiss, insofar as the Plaintiffs seek injunctive relief from Mr. Williams's misuse of the Marks.
VIII. COUNT TWELVE: CONVERSION
Count Twelve of the Amended Complaint alleges conversion against the Defendants. Am. Compl. ¶¶ 137-42. As above, see supra Parts V, VI, the parties dispute whether Virginia or Arizona law should apply to this Count. For the same reasons, i.e., because the "place of the wrong," where Mr. Williams allegedly engaged in tortious conduct, is Arizona, the court FINDS that Arizona law applies to Count Twelve. See Insteel, 276 F.Supp.2d at 486 (citing Jones, 246 Va. at 3, 431 S.E.2d 33) ; supra Part V.
"Under Arizona law, 'conversion is defined as an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another.' " Warfield v. Gardner, 346 F.Supp.2d 1033, 1045 (D. Ariz. 2004) (quoting Case Corp. v. Gehrke, 208 Ariz. 140, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) ). To state a claim for conversion, "a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion." Case Corp., 91 P.3d at 365 (citations omitted).
In support of their claims, the Plaintiffs allege that, through the franchise agreements, Ms. Williams agreed to assign to the Plaintiffs the franchise leases and telephone numbers; as well as return to the Plaintiffs customer lists, records, confidential materials, and franchise assets. Am. Compl. ¶ 138. These factual allegations, presumed true, establish Plaintiffs' right to possess the property at issue. As against Mr. Williams, the Plaintiffs allege that, through his operation of the franchise locations, Mr. Williams intentionally interfered with the Plaintiffs' franchise assets, customer lists, records, files, and other *661 property, and has constructive and physical possession and dominion of that property. Id. ¶ 139. This interference allegedly deprived the Plaintiffs of possession and use of their personal property, leading to damages arising from Mr. Williams's unlawful dominion and control. Id. ¶¶ 141-42. These allegations, presumed true, show that Mr. Williams engaged in wrongful dominion or control over the Plaintiffs' property, inconsistent with the Plaintiffs' rights.
However, in order for the Plaintiffs to state a claim for conversion, the property that Mr. Williams is alleged to have converted must be of the type that is subject to such a claim. See, e.g., SWC Baseline & Crismon Inv'rs, L.L.C. v. Augusta Ranch Ltd. P'ship, 228 Ariz. 271, 265 P.3d 1070, 1090-91 (Ariz. Ct. App. 2011) (stating that conversion claims apply only to chattels, and not to real property). Generally, either tangible personal property or "intangible property that is merged in, or identified with, some document" can be the subject of a conversion claim. Miller v. Hehlen, 209 Ariz. 462, 104 P.3d 193, 203 (Ariz. Ct. App. 2005) (citation omitted). If intangible property is at issue, a plaintiff must show that either a defendant converted a "single, unified document that had value as tangible property," or a defendant converted intangible property that "merged with a document in the same sense as a stock certificate or an insurance policy." Id.
Accordingly, franchise assets and confidential materials, generally, may include tangible personal property or the type of intangible property specified above. Thus, to the extent the Plaintiffs allege conversion of tangible personal property or "intangible property that is merged in, or identified with, some document," the court FINDS that the Plaintiffs have sufficiently stated a claim for conversion.
IX. CONCLUSION
For the foregoing reasons, the court DENIES Mr. Williams's Partial Motion to Dismiss as to Count Five, False Designation and Misrepresentation of Origin; Count Nine, Unjust Enrichment; and Count Twelve, Conversion. The court GRANTS Mr. Williams's Partial Motion to Dismiss as to Count Seven, Misappropriation of Trade Secrets; and Count Eight, Tortious Interference with an Existing Contract, and hereby DISMISSES Count Seven and Count Eight of the Amended Complaint against Mr. Williams.
As to Counts Ten and Eleven, the court GRANTS IN PART AND DENIES IN PART the Partial Motion to Dismiss. Regarding the Plaintiffs' claims for injunctive relief against Mr. Williams for breach of the franchise agreements, the court GRANTS the Partial Motion to Dismiss and DISMISSES Counts Ten and Eleven of the Amended Complaint on this ground against Mr. Williams. Regarding the Plaintiffs' claims for injunctive relief against Mr. Williams for misuse of the Plaintiffs' Marks, the court DENIES the Partial Motion to Dismiss on this ground.
The Clerk is DIRECTED to send a copy of this Memorandum Order to counsel for all parties.
IT IS SO ORDERED .

"False designation" is often referred to by courts as "false association." See generally Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014).

While the parties quote 15 U.S.C. § 1125(a)(1)(A) and (B), these two subsections are two separate claims: false designation under 15 U.S.C. § 1125(a) (1) (A) ; and false advertising under 15 U.S.C. § 1125(a)(1)(B). See Belmora LLC v. Bayer Consumer Care AG, 819 F.3d 697, 705-06 (4th Cir. 2016) (differentiating false designation and false advertising claims). The Amended Complaint makes clear that the Plaintiffs are alleging "False Designation and Misrepresentation of Origin," and not false advertising. See Am. Compl. ¶¶ 91-97. Accordingly, the court is befuddled why the Plaintiffs then spent two (2) pages of their Opposition arguing in support of a false advertising claim, when no such claim appears in the Amended Complaint in the first instance. See Pl. Opp'n at 10-12.

Whether Mr. Williams misappropriated the Plaintiffs' trade secrets is a substantive, as opposed to procedural, issue. Accordingly, this court, sitting in diversity, must apply Virginia state law. See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ; see also infra Part V. Therefore, the court will apply the Virginia Uniform Trade Secrets Act. See Va. Code Ann. §§ 59.1-336 -.1-343. However, both Virginia and Arizona have adopted the UTSA, upon which the misappropriation of trade secrets claim is based, and there is no substantive difference between this statute and the Arizona Uniform Trade Secrets Act. Compare Va. Code Ann. §§ 59.1-336 -.1-343 with Ariz. Rev. Stat. Ann. §§ 44-401 -44-407.

In their Opposition, the Plaintiffs state that their "confidential manuals, marketing strategies, and marketing programs have economic value from not being generally known and readily ascertainable." Pl. Opp'n at 13 (citing Am. Compl. ¶¶ 45, 60). However, the portions of the Amended Complaint to which they refer do not allege the existence of "independent economic value," relevant to Count Seven. Instead, these portions state that Ms. Williams acknowledged the information provided to her was to be used only in connection with the franchises, Am. Compl. ¶ 45; and list the Defendants' alleged breaches of post-termination obligations, id. ¶ 60.

Mr. Williams also argues that the Plaintiffs failed to sufficiently allege misappropriation. Mem. Supp. at 5-6. Because the court finds that the Plaintiffs failed to sufficiently plead the existence of trade secrets in the first instance, there is no need to address whether misappropriation was sufficiently pleaded.