NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DIANA PIMENTEL GARCIA, et al., *Plaintiffs/Appellants*,

*v.*

DEALERS AUTO AUCTION OF THE SOUTHWEST, LLC,
*Defendant/Appellee*.

No. 1 CA-CV 23-0171
FILED 12-21-2023

Appeal from the Superior Court in Maricopa County
No.  CV2021-091953
The Honorable Stephen M. Hopkins, Judge (Retired)
The Honorable Roger E. Brodman, Judge (Retired)

**REVERSED AND REMANDED**

COUNSEL

Choi & Fabian, PLC, Chandler
By Hyung S. Choi, Veronika Fabian
*Counsel for Plaintiffs/Appellants*

Wilenchik & Bartness, P.C., Phoenix
By Dennis I. Wilenchik, John D. Wilenchik, Karl M. Worthington
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Michael S. Catlett joined.

---

**C R U Z**, Judge:

¶1 Diana Pimentel Garcia, Abraham Martin Castro Ramos, Biahanca Luz Garcia Perez, Jose Martinez, Mark Anthony Wunderly, Josue Parra Bojorquez, Jason S. Carlyle, Fredy Perez Vargas, Arely Lopez, Brandon Castillo, and Federico Lopez Santos (collectively "Consumers") appeal the superior court's grant of summary judgment to Dealers Auto Auction of the Southwest, LLC ("Auto Auction") on their conversion claims and the court's denial of their cross-motion for partial summary judgment. For the following reasons, we reverse the superior court's grant of summary judgment to Auto Auction and remand for further proceedings consistent with this decision.

## FACTUAL AND PROCEDURAL HISTORY

¶2 The material facts are not in dispute. Auto Auction had a business auctioning vehicles primarily from one automobile dealer to another. A dealer selling a vehicle at auction was required to provide Auto Auction with the title to that vehicle within thirty days of the auction. Once Auto Auction received the title from the selling dealer, Auto Auction paid the selling dealer for the vehicle and notified the purchasing dealer it had forty-eight hours to pay Auto Auction. Auto Auction allowed certain purchasing dealers it had a relationship with, including used car dealer Arizona Road Trip Auto ("Road Trip"), to take vehicles the dealer won at auction to its own car lot without paying for the vehicle. Auto Auction did not list itself as lienholder on the title to the vehicles. After the purchasing dealer made payment, Auto Auction would give it the physical title with the reassignment section on the back completed.

¶3 Consumers each purchased a vehicle from Road Trip with cash in late 2020 or early 2021. Road Trip had acquired each of Consumers' vehicles from Auto Auction without paying for them or receiving the vehicles' titles. Road Trip issued Consumers temporary registration permits for the vehicles. Road Trip failed to pay Auto Auction for the vehicles and never obtained the vehicles' titles from Auto Auction. In

February and March 2021, after Consumers purchased the vehicles, Auto Auction had each of the vehicles titled in its name.

¶4        In late March 2021, the Arizona Department of Transportation ("ADOT") received a phone call from an Auto Auction manager complaining about Road Trip's failure to pay Auto Auction for sold vehicles.  The manager asked an ADOT detective whether Auto Auction could repossess the vehicles.  The detective told the manager that Auto Auction could only repossess vehicles from Road Trip's sales lot and advised Auto Auction "not to repossess cars from customers who bought from [Road Trip] in good faith."  About a week later, Auto Auction repossessed nine of the Consumer's vehicles from their residences and sold them shortly thereafter.[1]

¶5        In April and May 2021, Consumers filed a class action complaint and amended class action complaint against Auto Auction alleging conversion.  Auto Auction moved to dismiss the complaint.  The superior court denied the motion to dismiss and denied Consumers' request to proceed as a class action.  In October 2021, Consumers filed a second amended complaint.

¶6        Auto Auction moved for summary judgment in April 2022.  Consumers responded and cross-moved for partial summary judgment.  After oral argument, the superior court granted summary judgment to Auto Auction and denied Consumers' cross-motion for summary judgment, finding that Consumers were not good faith purchasers because they had constructive notice that Auto Auction owned the vehicles.  Consumers moved for reconsideration, and the superior court summarily denied the motion.  Consumers timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

---

[1]        Auto Auction did not repossess Brandon Castillo's and Federico Lopez Santos' vehicles, but the temporary registration permits expired and Auto Auction refused to release titles to Castillo and Santos.

**DISCUSSION**

¶7          We review a grant of summary judgment de novo, viewing the evidence and reasonable inferences in the light most favorable to the non-moving party. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 201 Ariz. 474, 482, ¶ 13 (2002). "Summary judgment is appropriate only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Id.* at ¶ 14 (citing Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990)). We review de novo the superior court's interpretation of statutes. *Hohokam Irrigation & Drainage Dist. v. Ariz. Pub. Serv. Co.*, 204 Ariz. 394, 397, ¶ 5 (2003).

¶8          Section 28-4409(A)(2) requires licensed motor vehicle dealers to have title to used vehicles before selling them. Road Trip violated that statute when it sold the vehicles to Consumers, but that does not answer the question of who owns the vehicles—Consumers or Auto Auction.

¶9          "Conversion is . . . an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 208 Ariz. 140, 143, ¶ 11 (App. 2004) (citation and internal quotation marks omitted). "To maintain an action for conversion, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion." *Id.* Consumers argue they were entitled to immediate possession of the vehicles because they were legal owners of the vehicles under Article 2-403(2) of the Arizona Uniform Commercial Code commonly known as "the entrustment principle." *See* A.R.S. § 47-2403(B).

¶10          Section 47-2403(B), which correlates to U.C.C. § 2-403(2), provides that "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a **buyer in ordinary course of business.**" (Emphasis added.) Under A.R.S. § 47-2403(C), "'[e]ntrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." Section 47-1201(B)(9) provides, in relevant part:

4

"Buyer in the ordinary course of business" means a person **that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods**, and in the ordinary course from a person . . . in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's usual or customary practices. . . . Only a buyer that takes possession of the goods or has a right to recover the goods from the seller under chapter 2 of this title may be a buyer in ordinary course of business.

(Emphasis added.)

¶11        Section 28-2133(B), a provision in Title 28 (Transportation) ("constructive notice provision") provides that "the filing and issuance of a new certificate of title as provided in this article is constructive notice to creditors of the owner or to subsequent purchasers **of all liens and encumbrances against the vehicle described in the certificate of title**, except those that are authorized by law and that are dependent on possession." (Emphasis added.)

¶12        Consumers contend they were buyers in the ordinary course of business entitled to U.C.C. protection because Auto Auction, a merchant in motor vehicles, entrusted the vehicles to Road Trip, also a merchant in motor vehicles. Auto Auction argues that Consumers were not "buyers in the ordinary course of business" because under A.R.S. § 28-2133(B) they had constructive notice that Road Trip did not own the vehicles. But under the U.C.C., "[k]nowledge means actual knowledge." A.R.S. § 47-1202(B). Constructive knowledge is not the same as actual knowledge. *Main I Ltd. P'ship v. Venture Cap. Constr. & Dev. Corp.*, 154 Ariz. 256, 259 (App. 1987) ("Constructive notice is neither notice nor knowledge but is a policy determination that under certain circumstances a person should be treated as if he had actual notice.") (citations and internal quotation marks omitted). Auto Auction does not argue that Consumers had actual notice that anyone other than Road Trip had any rights in the vehicles.

¶13        By its express terms, Title 28's constructive notice provision gives notice to subsequent purchasers with respect to liens and encumbrances after a secured creditor's lien is reflected on the title. It regulates the perfection of security interests, not sales to consumers and it does not operate to provide constructive notice of ownership. Here, when

Consumers purchased their vehicles from Road Trip, none of the vehicles had an Arizona title reflecting a lienholder. Thus, the constructive notice provision is inapplicable.

**¶14** Auto Auction argues it had the right to repossess the vehicles because its name was on the titles at the time of the repossessions. Section 28-101(59)(A) defines "owner" as "a person who holds legal title of a vehicle." But "ownership exists independent of a certificate of title," and "a purchaser or transferee of a vehicle may hold 'legal title' and be the 'owner' of the vehicle even if he has not applied for a certificate of title from the MVD and is therefore not the 'owner of record.'" *Reinke v. Alliance Towing*, 207 Ariz. 542, 545-46, ¶¶ 16, 20 (App. 2004). *See also Price v. Universal C.I.T. Credit Corp.*, 102 Ariz. 227, 229-32 (1967) (ownership of automobiles does not necessarily depend upon compliance with Arizona's certificate of title statutes—innocent purchasers of automobiles in the ordinary course of business obtained good title even though they failed to consult public records or ask to see title certificates).

**¶15** Auto Auction argues in the alternative that it held a security interest in the vehicles because it retained the vehicles' titles and therefore had the right to repossess the vehicles upon Road Trip's default. "The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer under § 47-2401 is limited in effect to a reservation of a security interest." A.R.S. § 47-1201(B)(35). "A security interest is no more than the right of a creditor to attach and perfect an interest in the property superior to the interest of any other." *First Nat. Bank of Ariz. v. Carbajal*, 132 Ariz. 263, 268 (1982). A security interest attaches to collateral only when it becomes enforceable against the debtor. A.R.S. § 47-9203(A). Section 47-9203(B) provides, in relevant part:

> [A] security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>
> 1. Value has been given;
>
> 2. The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>
> 3. One of the following conditions is met:
>
> (a) The debtor has authenticated a security agreement that provides a description of the collateral . . . .

Here, there was no signed security agreement between Auto Auction and Road Trip. Therefore, Auto Auction's security interest did not attach, and it was an unsecured creditor of Road Trip. Auto Auction cites A.R.S. § 47-9110(A)(1) for the proposition that no security agreement was necessary. That provision is inapplicable here because it applies only "until the debtor obtains possession of the goods," and Auto Auction no longer had possession of the vehicles after allowing Road Trip to take them to its lot and sell them to Consumers. *See* A.R.S. § 47-9110(A)(1).

**¶16** Basic goals of the U.C.C. include protecting good faith purchasers and facilitating the merchantability of property. *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 166 Ariz. 333, 338 (App. 1990) (when secured party entrusted possession of a boat to a boat dealer, it unwittingly gave the dealer the power to transfer its rights in the boat to a good faith purchaser under U.C.C. § 2-403(2) and secured party's repossession of the boat constituted conversion).

**¶17** A holding that a purchaser is presumed to know the contents of a title certificate for the vehicle the purchaser is buying from a licensed auto dealer would be onerous to the consumer and substantially impede commercial transactions. *See* 1 James J. White, Robert S. Summers, & Robert A. Hillman, Uniform Commercial Code § 4:34 (6th ed.) ("An individual buying a product from an apparent dealer in such goods expects to get good title. This expectation facilitates exchange. One cannot ascertain the seller's title without slowing commerce.").

**¶18** Here, Road Trip was a merchant that dealt in the sale of used vehicles. When Auto Auction delivered possession of the vehicles to Road Trip, it entrusted Road Trip with the power to transfer Auto Auction's rights to the vehicles to buyers in the ordinary course of business such as Consumers. Accordingly, the superior court erred by granting summary judgment in favor of Auto Auction.

**¶19** Consumers request that we remand to the superior court with instructions to enter partial summary judgment in their favor on the liability portion of their conversion claims. Because the superior court is in the best position to determine in the first instance whether Consumers are entitled to summary judgment, we decline Consumers' request and instead remand for further proceedings consistent with our decision.

**¶20** Consumers and Auto Auction both request attorneys' fees under A.R.S. § 12-341.01. Each party, therefore, agrees that the fee-shifting provision contained therein applies. As the prevailing parties, Consumers are entitled to costs. We award Consumers their reasonable attorneys' fees upon compliance with ARCAP 21.

## CONCLUSION

**¶21** For the foregoing reasons, we reverse and remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA